Thomas G. MULLIN, Appellant,

v.

STATE of Alaska, Appellee.

Nos. A–4809, A–4819.

Court of Appeals of Alaska.

Dec. 30, 1994.

---

Margaret W. Berck, Juneau, for appellant.

Cynthia M. Hora, Asst. Atty. Gen., Office of Special Prosecutions and Appeals, Anchorage, and Bruce M. Botelho, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and MANNHEIMER, JJ.

## OPINION

MANNHEIMER, Judge.

Following a jury trial in the Juneau superior court, Thomas G. Mullin was found guilty of seven counts of first-degree sexual abuse of a minor, AS 11.41.434(a)(1), and one count of second-degree sexual abuse of a minor, AS 11.41.436(a). Because Mullin was a third-felony offender, he faced a presumptive term of 25 years' imprisonment for the seven counts of first-degree sexual abuse (as well as a 6–year presumptive term for the one count of second-degree sexual abuse). AS 11.41.434(b) and AS 12.55.125(i)(4); AS 11.41.436(b) and AS 12.55.125(d)(2). Superior Court Judge Walter L. Carpeneti found five aggravating factors and sentenced Mullin to a composite term of 60 years' imprisonment with 20 years suspended (40 years to serve). Judge Carpeneti additionally revoked Mullin's probation from a prior felony and imposed (consecutively) 1 year of imprisonment that had previously been suspended. Thus, Mullin's total sentence is 61 years with 20 years suspended (41 years to serve).

Mullin concedes that his offenses are "atrocious and worthy of the utmost community condemnation". However, he contends that 41 years to serve, when compared to the sentences imposed in similar cases, is an unjustifiably severe term of imprisonment. We affirm.

Mullin's convictions for sexual abuse of a minor stem from a five-year sexual relationship that Mullin had with M.R.D., the daughter of Mullin's longtime girlfriend, L.D. Mullin and L.D. lived together, on and off, over several years. In May 1992, M.R.D. revealed Mullin's sexual abuse to Child Protective Services in the State of Washington. The Washington authorities contacted Mullin's probation officer in Juneau on May 29th. (As explained below, Mullin was on probation from two prior felonies.) On June 1st, Mullin's probation officer had the Juneau police check with Alaska Airlines; they found out that Mullin had booked passage out of state for June 4th. Acting on this information, the probation officer arrested Mullin when he appeared for his appointment on June 2nd.

Mullin was ultimately convicted of engaging in genital, anal, and oral penetration with M.R.D. during the months of November 1991

to April 1992. However, M.R.D. testified that Mullin had had sexual relations with her on a weekly basis from the time she was five years old. (M.R.D. was approaching her tenth birthday in April 1992.)

During the investigation of these offenses, the authorities discovered that Mullin had also sexually abused two other children. One of these children was ten-year-old E.C., Mullin's son from a previous marriage. The other child was a teenager who used to baby-sit M.R.D.; this girl told the authorities that in 1987 (when she was eleven years old) Mullin had had sex with her at least 25 times.

Mullin's first criminal conviction occurred in 1978; he was convicted of assault and battery for attacking a woman in the laundry room of the Hilton Hotel in Juneau. According to a later pre-sentence report, Mullin "struck [the woman], threw her on the floor, grabbed her throat, and placed his knee on her body while putting his hand over her mouth to prevent her from screaming.... Mr. Mullin desisted after being kicked in the groin by [the victim]." For this offense, Mullin was sentenced to 180 days in jail with 150 days suspended. Later in 1978, he was sentenced to serve another 30 days of this sentence when he violated his probation by drinking.

In 1980, Mullin was convicted of disorderly conduct for striking a man; he received a 5-day jail sentence, all suspended, and was ordered to pay a $175 fine. Mullin was later arrested for failing to pay his fine. In 1984, Mullin was convicted of fourth-degree assault for striking a woman; he was sentenced to a fine plus restitution.

In 1986, Mullin was convicted of his first Alaska felonies.[1] He pleaded no contest to two counts of fourth-degree misconduct involving controlled substances (possession of cocaine). The investigator who interviewed Mullin to prepare the pre-sentence report in that 1986 case wrote:

> Mr. Mullin states that he does not recall the present offense at all. He states it was

his day off and he was probably drinking heavily. [However,] Mr. Mullin also states that he does not use cocaine and that he has no problem with alcohol. He states his use of alcohol is no more than anyone else.

The pre-sentence investigator interviewed L.P., a woman who was married to Mullin from 1975 to 1977. L.P. reported that Mullin often beat her up during the marriage, that Mullin raped her following their divorce, and that, when she started to see another man 8 months after the divorce, Mullin came to her house and "cut up all her property with a knife". L.P. also told the pre-sentence investigator about another incident in which Mullin threatened to kill their infant son. According to L.P., when their child was one year old, Mullin pointed a gun at the sleeping boy and told L.P. that, if she did not love him, there was no use in their son's living.

The pre-sentence investigator also interviewed C.C., a woman who was married to Mullin from 1980 to 1984. C.C. reported that Mullin beat her up four to six times during the marriage and that, one time when he was angry, he ripped C.C.'s couch to pieces with a knife.

In 1984, Mullin was charged by the State of Washington with making harassing phone calls to C.C. after she left him. According to the complaint, Mullin made three threatening telephone calls to his estranged wife at her place of work. Mullin told her that "she was a dead woman" and that he would obtain custody of the children if she were dead. Mullin failed to appear for the trial of this charge; the Washington court issued an arrest warrant that was still outstanding in 1986, when Mullin committed his first Alaska felonies.

For the 1986 drug offenses, Mullin was sentenced to 2 years' imprisonment with all but 45 days suspended. The court allowed Mullin to serve these 45 days periodically, on Mullin's days off from work, so that he could keep his job.

---

1. Mullin had earlier been convicted of felony theft in the State of Washington for stealing a television valued at $250.00. He received a de-

ferred sentencing, and the charge was dismissed after a year.

In February 1987, Mullin submitted a urine specimen that tested positive for both marijuana and cocaine. His probation officer considered filing a petition to revoke Mullin's probation, but Mullin checked himself into the Juneau Recovery Unit for detoxification and drug treatment. Mullin stayed there from February 9 to March 11, 1987, successfully completing the program.

However, another of Mullin's conditions of probation required him to attend MEN, Inc. an anger/violence counseling program. Mullin refused to participate in the program; he missed all of his appointments. According to his probation officer, Mullin "maintain[ed] that he [did] not need the program and [that he] missed [the] appointments either because of work or [because of] scheduling problems created by the MEN program."

In addition, over the first year of his probation, Mullin served only 4 days of his 45-day sentence: 2 days in December 1986, 1 day in March 1987, and 1 day in August 1987. Mullin was reluctant to provide his probation officer with his work schedule for most of these months. He ultimately admitted that "there were times he could have served [more days of his sentence] but did not."

Based on Mullin's refusal to attend the counseling program and on his failure to serve his jail sentence on his available days off, Mullin's probation officer petitioned the superior court to revoke his probation. The superior court revoked Mullin's probation and sentenced him to serve an additional 90 days.

On September 5, 1987, just days before Mullin's scheduled sentencing hearing for this probation revocation, Mullin committed another felony. Mullin was working for Temsco Helicopters; he was entrusted with $4,116.50 that Temsco had received from a cruise ship company. Mullin was responsible for depositing this money into Temsco's bank account, but the money never arrived at the bank. Three days later, Mullin gave $1800 in cash to his girlfriend, telling her that he had made this money in a drug deal.

Charged with second-degree theft, Mullin reached a plea agreement with the State.

Mullin pleaded no contest to the theft charge on two conditions: that his time to serve would be limited to 2 years (i.e., any additional imprisonment would be suspended), and that no additional jail time would be imposed from his drug felonies.

Mullin was imprisoned for this theft conviction from May 1988 to September 1989. While incarcerated, Mullin participated in a counseling program for batterers. According to the termination summary prepared by the director of the program, Mullin "exhibit[ed] a style of manipulation and denial[.] [He] evidenced [a] need to control his treatment[.] He denies his need of treatment and views other factors (job, car, etc.) as his priorities."

In June 1990, Mullin furnished liquor to his 13-year-old son and a group of his son's friends. One girl passed out from drinking; she apparently spent the night in Mullin's bedroom behind a locked door. The next morning, when she was taken to the hospital, the girl's blood alcohol level was still .26 percent. The Juneau police informed Mullin's probation officer that they were investigating this incident. When the probation officer confronted Mullin, Mullin "adamantly denied" giving alcohol to the children. "He claimed [that] the kids got into the booze that had been left there by his friends." Despite his denial, Mullin was convicted of furnishing liquor to minors in July 1991 and was sentenced to 90 days in jail with 85 days suspended.

Thus, when Mullin appeared for sentencing for the sexual abuse offenses in this case, he had a 15-year criminal record that included two prior felonies, several misdemeanors, several probation revocations, and 15 traffic violations. In addition, Mullin had committed numerous acts of violence or threatened violence against his wives and children for which he had not been prosecuted.

As a third-felony offender, Mullin faced a 25-year presumptive term of imprisonment for first-degree sexual abuse of a minor. AS 11.41.434(b) and AS 12.55.125(i)(4). Superior Court Judge Walter L. Carpeneti found that

the State had proved five aggravating factors under AS 12.55.155(c). Of these, the judge found three to be important to Mullin's sentence: (c)(18)(B)—that Mullin had sexually abused other minors; (c)(10)—that Mullin's conduct was among the most serious included in the definition of first-degree sexual abuse of a minor; and (c)(20)—that Mullin had been on felony probation when he committed the sexual abuse offenses.

After reviewing Mullin's record, Judge Carpeneti concluded that he should give no weight to the goal of Mullin's rehabilitation when fashioning his sentence:

> I agree with [the prosecutor] that rehabilitation is not a factor to be considered in this case. Mr. Mullin has been before the Court a number of times, and there is no doubt in my mind that essentially rehabilitative sentences have been tried a number of times [but] obviously without success. I read the four pre-sentence reports this morning, and the theme that struck me in all of them is that the defendant was given a number of chances, both [by] this court and [by] Judge Pegues ..., and the rehabilitative approach obviously was unsuccessful.... [T]he argument that [the prosecutor] makes concerning Mr. Mullin going through the MEN program—and apparently successfully completing it—at a time when these offenses were going on is really a point that can't be ignored[.] It just doesn't appear to this Court that rehabilitation is at all a factor that ought to be considered in this case; it just doesn't seem to be there.

For similar reasons, Judge Carpeneti discounted the goal of deterring Mullin:

> I don't think that's something that should be given a great amount of weight here, because of the fact that the defendant has been through the court so many times, and he has successively greater sentences, and it seems not to have made any difference.

Judge Carpeneti concluded that deterrence of others and community condemnation of Mullin's conduct were important sentencing goals when fashioning Mullin's sentence.

However, the judge found that isolation should be the paramount goal attained by Mullin's sentence:

> The next factor is isolation. I agree with [the prosecutor's] analysis that [this] is the most important factor in this case. Mr. Mullin [is] a person who's been through the court system a number of times, who's had a number of opportunities to move from a criminal life to one that is not. He has not taken advantage of any of those opportunities. He has committed all different types of offenses, as [the pre-sentence report] points out. He now has a criminal record spanning several types of offenses: sexual abuse, drugs, theft, assault. He has a record of domestic violence [and] a long traffic record. It seems to me that isolation is the most important factor in trying to come up with an appropriate sentence in this case.

Judge Carpeneti found that Mullin was a worst offender for purposes of imposing the maximum sentence. *See Tommy v. State,* 551 P.2d 179 (Alaska 1976). Judge Carpeneti further found that a sentence beyond the 30–year maximum for any one count of first-degree sexual abuse was necessary to protect the public from Mullin. *See Mutschler v. State,* 560 P.2d 377, 381 (Alaska 1977). As noted above, Judge Carpeneti sentenced Mullin to serve 41 years in prison (61 years with 20 suspended).

■ In *State v. Andrews,* 707 P.2d 900 (Alaska App.1985), *aff'd,* 723 P.2d 85 (Alaska 1986), this court outlined three criteria that might justify sentencing a first-felony offender convicted of sexually abusing a minor to a term of imprisonment substantially greater than the presumptive 8–year term. These criteria are: (1) that the defendant abused multiple victims; (2) that the defendant committed multiple assaults on the same victim; and (3) that the defendant inflicted serious injury on one or more victims. *Andrews,* 707 P.2d at 913–14.

■ Using these *Andrews* criteria, Mullin's sexual abuse offense was aggravated.

Mullin abused M.R.D. repeatedly over the course of five years, and he abused two other children as well, his son and a babysitter. These factors support a sentence greater than the 25–year presumptive term that Mullin faced as a third-felony offender. Moreover, Judge Carpeneti found that Mullin was a "worst offender" (essentially, a person for whom there was no realistic expectation of rehabilitation) and that a sentence greater than 30 years' imprisonment (the maximum sentence for any one of Mullin's counts of sexual abuse) was necessary to protect society from Mullin.

In prior cases involving first-degree sexual assault and first-degree sexual abuse of a minor, Alaska sentencing decisions have grouped aggravated cases into two categories. For the more serious category of offenders, represented by such cases as *Nix v. State*, 653 P.2d 1093 (Alaska App.1982), *Hancock v. State*, 741 P.2d 1210 (Alaska App. 1987), and *Yearty v. State*, 805 P.2d 987 (Alaska App.1991), this court has approved sentences of up to 40 years to serve. However, for a second category of serious offenders, represented by such cases as *Hintz v. State*, 627 P.2d 207 (Alaska 1981), *Tookak v. State*, 648 P.2d 1018 (Alaska App.1982), *Patterson v. State*, 689 P.2d 146 (Alaska App. 1984), and *Williams v. State*, 809 P.2d 931 (Alaska App.1991), sentences have been limited to 30 years to serve. Mullin argues that the facts of his case are analogous to the 30–year cases, while the State argues that Mullin's case is more similar to the 40–year cases.

One aspect of Mullin's case distinguishes it from all the cases listed in the previous paragraph: Mullin was a third-felony offender and faced a presumptive term of 25 years' imprisonment. This presumptive term represents the legislature's judgement as to the appropriate sentence for a typical third-felony offender who commits a typical act of sexual abuse upon a minor. *Juneby v. State*, 641 P.2d 823, 833, 838 (Alaska App.1982).

Judge Carpeneti found that Mullin was not a typical offender but was instead a worst offender. Judge Carpeneti further found that Mullin's offenses were not typical but were instead significantly aggravated. The record supports both of these findings.

Mullin engaged in years-long sexual abuse of M.R.D.; he also sexually abused two other children. The record reveals that, besides these acts of sexual abuse, Mullin has engaged in significant acts of violence both toward strangers and toward members of his own households, that Mullin has already served a substantial prison sentence (for his felony theft conviction), that Mullin has persistently resisted both rehabilitative programs and probation supervision, and that Mullin's criminal behavior has escalated in seriousness over the past 15 years.

These factors place Mullin's case among the most aggravated category of sexual abuse and sexual abuse offenders. These factors thus support Judge Carpeneti's conclusion that Mullin posed a substantial degree of danger to society and that, in order to protect society, he needed to sentence Mullin to a term of imprisonment exceeding the 30–year maximum for any single count of first-degree sexual abuse.

Accordingly, we conclude that the sentence imposed by the superior court is not clearly mistaken. *McClain v. State*, 519 P.2d 811, 813–14 (Alaska 1974). The sentencing decision of the superior court is AFFIRMED.