Thomas L. BELTZ, JR., Appellant,

v.

STATE of Alaska, Appellee.

No. A–6651.

Court of Appeals of Alaska.

May 28, 1999.

**15.** *See McClain v. State,* 519 P.2d 811, 813–14   (Alaska 1974).

Paul E. Malin, Assistant Public Defender, and Barbara K. Brink, Public Defender, Anchorage, for Appellant.

William H. Hawley, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

## OPINION

MANNHEIMER, Judge.

Thomas L. Beltz, Jr., was convicted of two counts of first-degree sexual abuse of a minor [1] for engaging in sexual penetration with his eleven-year-old daughter. The facts of the case are summarized in *Beltz v. State*, 895 P.2d 513, 515 (Alaska App.1995). In *Beltz*, we reversed Beltz's original convictions because he was denied the opportunity to fully cross-examine one of the witnesses against him.[2] Beltz has now been re-convicted of the same charges, and he again appeals. For the reasons explained here, we reject all of Beltz's arguments on appeal and we affirm his convictions.

Beltz first argues that the jury was misinstructed concerning the definitions of "fellatio" and "cunnilingus", two of the forms of sexual penetration defined in AS 11.81.900(b)(56). Beltz asked the trial judge to instruct the jury that both of these forms of sexual penetration require proof that one or both participants obtained "stimulation" or "sexual satisfaction".

Beltz argues that, because Title 11 of the Alaska Statutes contains no definition of either "fellatio" or "cunnilingus", courts should look to the dictionary definition of these terms. Beltz points out that some dictionaries define "fellatio" and "cunnilingus" as forms of "stimulation" that are intended to result in "sexual satisfaction".[3] From this, Beltz concludes that "fellatio" and "cunnilingus" require proof that one or both of the participants obtained sexual stimulation from the act.

Sexual stimulation may normally be the intended result of these two forms of sexual activity, but the dictionaries Beltz relies on are guilty of confusing the activity with the intended result. Not all dictionaries fall into this error. For example, *Webster's New World Dictionary of American English* (3rd College Edition, 1988) defines "cunnilingus" as "a sexual activity involving oral contact with the female genitals"; the same dictionary defines "fellatio" as "a sexual activity involving oral contact with the penis".[4]

Moreover, even if every dictionary in common use defined "cunnilingus" and "fellatio" as Beltz suggests, we would still reject Beltz's contention that these forms of sexual activity require proof of sexual stimulation. When a court seeks the legal definition of terms used in a statute, the ultimate task is to ascertain what the legislature meant when it used these terms. "The guiding principle of statutory construction is to ascertain and implement the intent of the legislature or agency that promulgated the statute or regulation."[5] Because the legislature may use a term in a different way from its common usage, "[i]dentifying the 'plain meaning' of a word or phrase used in a regulation does not end the process of statutory construction".[6]

[Even though] the "plain meaning" of a term is determined, ... the court should not apply it mechanically. *Alaska Public Employees Assoc. v. Fairbanks*, 753 P.2d 725, 727 (Alaska 1988). Instead, the court

---

1. AS 11.41.434(a)(2)(B).

2. *See id.* at 519.

3. *See The Random House Dictionary of the English Language, The Unabridged Edition* (1973), pp. 354 and 522, respectively; *Webster's Third New International Dictionary, Unabridged* (1963), pp. 554 and 836, respectively.

4. *Id.*, pp. 338 and 498, respectively.

5. *Millman v. State*, 841 P.2d 190, 194 (Alaska App.1992).

6. *Id.*

uses a sliding scale approach to statutory interpretation in which it also considers the legislative history of the statute and whether the history reveals a legislative intent and meaning which is contrary to the plain meaning. *Id.*

*Stephan v. State*, 810 P.2d 564, 566 (Alaska App.1991). The legislative history of AS 11.81.900(b)(55) and (b)(56)—the statutory definitions of "sexual contact" and "sexual penetration"—shows that the legislature did not intend these terms to require proof of sexual satisfaction or stimulation.

Alaska's definition of sexual penetration was drawn from the law of Michigan.[7] The Michigan courts construed this definition as requiring only proof of the prohibited contact, regardless of the actor's intent. For example, in *People v. Garrow*[8], the defendant was convicted of engaging in non-consensual sexual penetration with his former girlfriend. After finding the ex-girlfriend with another man, the defendant attacked her and gouged her vagina with his fingers.[9] The defendant argued that he had not committed "sexual penetration" because his assault was not sexually motivated.[10] The Michigan Court of Appeals rejected this contention. The court held that "sexual penetration" did not require proof of any specific intent, and thus the defendant's conduct constituted sexual penetration even though the penetration may have been motivated by anger or a desire to injure and humiliate, rather than sexual desire.[11]

The legislative history of the sibling definition, "sexual contact", is even clearer: the Alaska legislature expressly amended this definition after this court construed the former definition to require proof of the defendant's intent to achieve sexual arousal or gratification. This history is recapitulated in *Peratrovich v. State.*[12]

We particularly note that, when the legislature amended the definition of "sexual contact" to undo the interpretation adopted by this court, the legislature described the goal of its amendment in the Senate Journal:

In adopting [the current definition of "sexual contact"], the legislature intends to reaffirm that crimes involving sexual contact and sexual penetration are general intent crimes.

1984 Senate Journal, p. 3387.

As illustrated by the facts of *Garrow* (the Michigan decision described above), and as this court noted in *Peratrovich*[13], sexual activity is often motivated, not by an intent to obtain or bestow sexual stimulation, but rather by the defendant's desire to dominate, exploit, humiliate, or degrade the victim. Recognizing this fact, the legislature has declared that "sexual penetration" and "sexual contact" require proof of nothing more than the prohibited physical contact. Beltz's proposal—to graft a requirement of sexual stimulation onto the definition of "sexual penetration"—runs counter to this purpose.

We therefore conclude that "sexual penetration" does not require proof that either party sought or obtained sexual stimulation.[14] Accordingly, we hold that oral-genital contact, no matter what the intent or the result, is sufficient to prove cunnilingus or fellatio. Beltz's jury was correctly instructed.

---

**7.** *See Alaska Revised Criminal Code, Tentative Draft* (1977), Part I, Article 4. The draft definition of "sexual penetration", TD 11.41.460(4), is found at page 72. The derivation of this definition, Michigan Compiled Laws § 750.520(a), is found in Appendix Two ("Derivations") at page 100.

**8.** 99 Mich.App. 834, 298 N.W.2d 627 (1980).

**9.** *See id.* at 628.

**10.** *See id.* at 629.

**11.** *See id.* at 629–630.

**12.** 903 P.2d 1071, 1076–78 (Alaska App.1995).

**13.** *See Peratrovich*, 903 P.2d at 1076.

**14.** We note that, even in jurisdictions that define "cunnilingus" and "fellatio" as being forms of sexual "stimulation", the courts tend to construe "stimulation" broadly, so that any oral-genital contact qualifies as "cunnilingus" or "fellatio". *See Brady v. State*, 722 So.2d 151, 155 (Miss.App. 1998); *State in the Interest of S.M.*, 284 N.J.Super. 611, 666 A.2d 177, 180–81 (App.1995); *State v. Beaulieu*, 674 A.2d 377, 378 (R.I.1996). *See also State v. Clark*, 106 Ohio App.3d 426, 666 N.E.2d 308, 309–310 (1995); *Horton v. Commonwealth*, 255 Va. 606, 499 S.E.2d 258, 261–62 (1998).

Beltz next contends that his confession to the Alaska State Troopers was involuntary and should have been suppressed. The facts of Beltz's case are somewhat atypical. As we described in our prior opinion in this case [15], Beltz appeared unannounced at the Palmer office of the Alaska State Troopers; he reported that his daughter had accused him of sexual abuse. When a clerk informed Investigator Jamie Hall that there was a gentleman at the front counter who wished to "talk to somebody about sex abuse", Hall met Beltz and interviewed him for forty minutes.[16] During this interview, Bell at first asserted that his daughter's account was false, but he later admitted that "[e]verything my daughter says is true".[17]

Beltz contends that Hall took advantage of Beltz's agitated mental state by seeming to befriend him and by implicitly promising that Beltz would receive lenient treatment if he confessed. Beltz relies primarily on the following exchange:

> HALL: If there was a time that you might have made a mistake, if there was, you're human, I'm human, we've made mistakes. Okay? If it was just a time or two, and it hasn't happened since, and it's not going to happen again, that's one thing. If it's something that's happened hundreds of times ..., that's something else. But if it was one mistake, one moment of passion, one moment of—of dirty thoughts or whatever, if there was something that kind of took control of you at that time, it's not like you've done it a hundred times. Am I making sense?
>
> BELTZ: Sure. I understand.
>
> HALL: Okay.
>
> BELTZ: I understand what you're ...
>
> HALL: Okay.
>
> BELTZ: There's never, ever been any other actions towards my daughter on my

part, other—other than this one incident. Okay.

> ...
>
> HALL: Well, it's not the end of the world.
>
> BELTZ: I understand that.
>
> HALL: It's a log in the trail; let's step over it, and we'll go on ... with our life.

Beltz argues that, because Hall downplayed the seriousness of Beltz's crime, Beltz was led to believe that he would suffer no consequences if he confessed.

In general, "the fact that an interrogator is sympathetic or friendly toward a defendant, or professes a general desire to help, does not in itself render a subsequent confession involuntary."[18] For instance, in *Thompson v. State*[19], this court rejected a claim of involuntariness based on facts similar to Beltz's case.

Thompson claimed that his confession was involuntary because, during the police interview with Thompson, the officers "played on his sympathies, minimized his guilt, and placed much of the blame for the homicide on the victim".[20] We held that such interview strategies do not, *per se*, result in an involuntary confession. We noted that the ultimate test of voluntariness is whether, under the totality of the circumstances, "the conduct of law enforcement [officers] was such as to overbear [the defendant's] will to resist and bring about confessions not freely self[-] determined."[21] We also noted that we had previously upheld confessions made after the police told defendants that they would be better off telling the truth, or that their cooperation might influence the ultimate result of the investigation or prosecution.[22]

At the hearing on Beltz's suppression motion, Beltz testified that he was mentally agitated during his interview with Hall and that, when Hall minimized the seriousness of

**15.** *See Beltz*, 895 P.2d at 515.

**16.** *Id.*

**17.** *Id.*

**18.** *Cole v. State*, 923 P.2d 820, 831 (Alaska App. 1996).

**19.** 768 P.2d 127, 131–32 (Alaska App.1989).

**20.** *Id.* at 131.

**21.** *Id.* (quoting *Stobaugh v. State*, 614 P.2d 767, 772 (Alaska 1980)).

**22.** *See id.* at 131–32.

Beltz's criminal conduct, Beltz interpreted this as an implicit promise that he would suffer no consequences if he confessed to a single episode of sexually abusing his daughter. Superior Court Judge Beverly W. Cutler, who presided at this hearing, declared that Beltz's testimony was "highly suspect"—that it appeared to her that Beltz had contrived his testimony to satisfy the test for involuntariness.

We note that Beltz voluntarily contacted the troopers when they had no reason to suspect him of criminal conduct. He was not in custody when he was interviewed, and our review of the tape shows that both Hall and Beltz remained calm and casual throughout the interview.

Moreover, Beltz was a mature adult and no stranger to the criminal justice system: he had spent much of his career in law enforcement. Beltz was employed as a correctional officer in 1977, an airport security officer from 1977 to 1979, a public safety officer from 1979 to 1983, a private security officer from 1983 to 1985, a correctional officer again from 1985 to 1989, and a private security officer again from 1989 to 1992. He attended the Airport Police academy in 1978, the Municipal Police academy in 1980, the Alaska Correctional Officers academy in 1986.

Given Beltz's age, his background, and the circumstances and atmosphere of the interview, Judge Cutler could reasonably conclude that Beltz did not interpret Hall's remarks as a promise of immunity from prosecution for sexual abuse of a minor. We agree with Judge Cutler that, under the totality of these circumstances, Hall did nothing to overbear Beltz's will. Beltz's confession was "freely self-determined" and therefore voluntary.

Beltz's remaining contentions on appeal attack various aspects of his sentencing.

■ Beltz argues that his conduct was among the least serious within the definition

of first-degree sexual abuse of a minor, and therefore his offenses were mitigated under AS 12.55.155(d)(9). Beltz bases his argument on the fact that his assault on his daughter was a one-time incident of brief duration, involving no physical injury and only slight penetration.

The fact that Beltz's conduct was an isolated incident of sexual abuse may mean that his conduct was not aggravated, but this fact does not establish that his conduct was mitigated.[23] Nor does the absence of violence place Beltz's conduct among the least serious in its class, for "the typical child sexual abuse case involves little or no violence".[24]

We note also that the evidence suggests that Beltz's sexual abuse of his daughter was premeditated: he awakened his daughter, instructed her to take both Tylenol and a cold medication even though she was not sick, and then Beltz directed her to sleep in his bed.

It was Beltz's burden to prove the proposed mitigator by clear and convincing evidence—that is, to clearly and convincingly prove that his conduct was among the least serious encompassed within the definition of first-degree sexual abuse of a minor.[25] Judge Cutler concluded that Beltz had not met that burden. To prevail on appeal, Beltz must show that Judge Cutler's decision to reject the mitigator was clearly erroneous.[26] Having reviewed the record, we conclude that Beltz has failed to show this.

■ Beltz next argues that, even if his offense was not among the least serious, Judge Cutler still should have referred his case to the statewide three-judge sentencing panel on the basis that the 8–year presumptive term for sexual abuse of a minor is manifestly unjust.[27] Beltz relies primarily on Judge Cutler's remark at sentencing that, if the legislature had not enacted an 8–year presumptive term for first felony offenders convicted of first-degree sexual abuse of a minor, "half the superior court judges in the

**23.** *See State v. Woods,* 680 P.2d 1195, 1198 (Alaska App.1984).

**24.** *Simpson v. State,* 796 P.2d 840, 843 (Alaska App.1990).

**25.** *See* AS 12.55.155(f).

**26.** *See Lepley v. State,* 807 P.2d 1095, 1099 n. 1 (Alaska App.1991).

**27.** *See* AS 12.55.165.

state" would have concluded that 5 years was an adequate prison term for an offense like Beltz's.

Even if we assume the truth of Judge Cutler's remark—that is, even if we assume that many judges would sentence Beltz to less than the 8–year presumptive term if his case were not governed by presumptive sentencing—this does not establish that the 8–year presumptive term is manifestly unjust in Beltz's case. It is the legislature, not the judiciary, which establishes the punishment or range of punishments for a particular offense. As the Alaska Supreme Court has said,

> [J]udgments as to the extent to which the community condemns a particular offense are more properly made in the legislative [arena] than by the judiciary.

*Leuch v. State,* 633 P.2d 1006, 1012–13 (Alaska 1981).

The presumptive term for an offense represents the legislature's assessment of the appropriate sentence for a typical offender within that category.[28] Even if half the judges of this state disagreed with the legislature's assessment, that would be irrelevant. As the Alaska Supreme Court has explained,

> Save only as limited by constitutional safeguards, the legislature may choose any reasonable means to protect the people from the violation of criminal laws. In general, the comparative gravity of offenses and their classification and resultant punishment is for legislative determination.

*Alex v. State,* 484 P.2d 677, 685 (Alaska 1971).

When the legislature promulgated AS 12.55.165 and 175—the so-called "safety valve" statutes—the legislature recognized that there might be unusual circumstances in which the prescribed presumptive term of imprisonment would be manifestly unjust (even after all possible adjustment for aggravating and mitigating factors). In such circumstances, a defendant's case can be referred to the three-judge sentencing panel—a panel that has the power to impose sentence outside the normal constraints of presumptive sentencing. But these "safety valve" statutes do not authorize sentencing judges to disregard the legislature's assessment concerning the relative seriousness of the crime or the general appropriateness of the prescribed penalty.

In other words, for purposes of AS 12.55.165 and 175, a presumptive term can not be "manifestly unjust" in general. It can only be "manifestly unjust" as applied to a particular defendant. Before a sentencing judge can properly characterize a presumptive term as "manifestly unjust", the judge must articulate specific circumstances that make the defendant significantly different from a typical offender within that category or that make the defendant's conduct significantly different from a typical offense.

Judge Cutler's sentencing remarks demonstrate that she understood and applied these legal principles. She stated:

> [T]he question is not [whether judges might impose a lesser sentence in the absence of presumptive sentencing], but how does the legislat[ure's] presumptive sentencing scheme apply to Mr. Beltz's conduct? Because our job as judges is to apply the law ..., not to ignore the law, [even if] maybe, on our own, we would have done something slightly different[.]

It was Beltz's burden to show, by clear and convincing evidence, that the circumstances of his case made the 8–year presumptive term manifestly unjust.[29] As explained above, Judge Cutler expressly rejected Beltz's assertion that his conduct was among the least serious within the definition of first-degree sexual abuse of a minor. We have upheld that ruling. Beltz failed to offer any other significant reason why his background or his conduct should be deemed extraordinarily different from the background or conduct of a typical first felony offender convicted of first-degree sexual abuse of a minor.

---

28. *See Mullin v. State,* 886 P.2d 1323, 1328 (Alaska App.1994); *Juneby v. State,* 641 P.2d 823, 833, 838 (Alaska App.1982), *modified on rehearing,* 665 P.2d 30 (Alaska App.1983).

29. *See* AS 12.55.165(a); *Kirby v. State,* 748 P.2d 757, 763–64 (Alaska App.1987).

We therefore uphold Judge Cutler's refusal to refer Beltz's case to the three-judge panel on this basis.

■ Beltz offers one other argument why Judge Cutler should have referred his case to the three-judge panel. He asserts that he demonstrated an extraordinary potential for rehabilitation, thus qualifying for the non-statutory mitigating factor recognized in *Smith v. State*.[30]

Again, it was Beltz's burden to prove by clear and convincing evidence that he had extraordinary potential for rehabilitation.[31] Judge Cutler found that Beltz had failed to prove this non-statutory mitigator. She declared that, although Beltz appeared to be a "very functional individual", the record did not support his claim of extraordinary potential for rehabilitation. Judge Cutler noted, in particular, that Beltz continued to deny that he had committed the offenses.

According to the pre-sentence report, Beltz continued to profess his innocence of any wrongdoing, and he told the pre-sentence investigator that he had "no desire to attend" the sex offender treatment program offered by the Department of Corrections at Hiland Mountain. The pre-sentence investigator noted that Beltz had not attended any treatment programs while he was in custody. The author of the report concluded, "[b]ased upon [Beltz's] unwillingness to accept any responsibility for his actions [and his lack of] remorse, ... [Beltz's] rehabilitation will be difficult to achieve."

Both at the sentencing hearing and in his brief to this court, Beltz has advanced various reasons why he could not openly admit his guilt or participate in sex offender treatment. This misses the point. The question is whether Beltz demonstrated, by clear and convincing evidence, that he had extraordinary potential for rehabilitation. Even after the jury found him guilty, Beltz was of course entitled to protest his innocence and to decline to participate in therapy. But Beltz bore the burden of proving the pro-posed mitigator, and Judge Cutler had to make her decision on the record before her.

■ When a defendant proposes the non-statutory mitigator of extraordinary potential for rehabilitation, it is the defendant's burden to prove by clear and convincing evidence

> "that [the defendant] can adequately be treated in the community and need not be incarcerated for the full presumptive term in order to prevent future criminal activity." Such a prediction of successful treatment and non-recidivism should only be made when the sentencing court is reasonably satisfied both that it knows why a particular crime was committed and that the conditions leading to the criminal act will not recur—either because the factors that led the defendant to commit the crime are readily correctable or because the defendant's criminal conduct resulted from unusual environmental stresses unlikely ever to recur.

*Lepley v. State*, 807 P.2d 1095, 1100 (Alaska App.1991) (quoting *Kirby v. State*[32]).

The record in this case shows that Beltz has refused to acknowledge responsibility for his crimes and has declined to engage in any therapy or treatment. He thus failed to advance any explanation for his crimes, nor did he provide Judge Cutler with convincing evidence "that the conditions leading to [his] criminal act[s] will not recur". The record thus supports Judge Cutler's ruling that Beltz failed to prove an extraordinary potential for rehabilitation.

We have considered and rejected all of Beltz's claims on appeal. Accordingly, the judgement of the superior court is AFFIRMED.

---

**30.**  711 P.2d 561, 570–72 (Alaska App.1985).

**31.**  See footnote 29.

**32.**  748 P.2d 757, 766 (Alaska App.1987).