**James H. LUCKART, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–11292.**

Court of Appeals of Alaska.

Dec. 20, 2013.

Michael Schwaiger, Assistant Public Defender, and Quinlan Steiner, Public Defender, Anchorage, for the Appellant.

Diane L. Wendlandt, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Michael C. Geraghty, Attorney General, Juneau, for the Appellee.

Before: MANNHEIMER, Chief Judge, ALLARD, Judge, and COATS, Senior Judge *.

*OPINION*

MANNHEIMER, Judge.

James H. Luckart stands convicted of attempted first-degree sexual assault. As we explained in our prior decision in this case— *Luckart v. State,* 270 P.3d 816 (Alaska App. 2012)—Luckart faces a presumptive sentencing range of 25 to 35 years' imprisonment for his offense.

Luckart's sentencing judge referred his case to the statewide three-judge sentencing panel because she concluded that it would be manifestly unjust to sentence Luckart within this presumptive range.[1] The sentencing judge concluded that the injustice arose primarily from the fact that Luckart would not be eligible to apply for early release on discretionary parole during his term of imprisonment.[2]

See AS 33.16.090(b)(2), which declares that defendants who receive a sentence under AS 12.55.125(i)—that is, defendants who are sentenced for sexual assault or sexual abuse of a minor—"may not be released on discretionary parole until [they have] served the term imposed, less good time [awarded] under AS

---

1. *Luckart,* 270 P.3d at 818.

2. *Ibid.*

33.20.010", unless the three-judge panel orders otherwise.

When the three-judge panel first considered Luckart's case, the panel erroneously concluded that it had no authority to adjust Luckart's sentence, so the panel sent Luckart's case back to the individual sentencing judge.[3] In *Luckart v. State*, we reversed the three-judge panel's decision, and we directed the panel to reconsider Luckart's case. 270 P.3d at 820–21.

Now the three-judge panel has considered Luckart's case for a second time. The three-judge panel agreed with the sentencing judge that it would be unjust to sentence Luckart to a term of imprisonment within the applicable presumptive range of 25 to 35 years. However, the panel concluded that it had no authority to follow the sentencing judge's suggestion of granting Luckart enhanced eligibility for discretionary parole. So, instead, the panel sentenced Luckart to a term of imprisonment well below the applicable range: 25 years with 11 years suspended (14 years to serve).

Luckart now appeals this sentence.

Luckart first argues that the three-judge panel misunderstood the scope of its authority—that the panel *did* have the authority to grant him enhanced eligibility for discretionary parole. The State agrees with Luckart. And for the reasons explained in this opinion, we agree as well.

Luckart then argues that he should gain a double advantage from the three-judge panel's error. As we just explained, because the panel erroneously believed that it could not expand Luckart's eligibility for discretionary parole, the panel sentenced Luckart to 14 years to serve—a term of imprisonment below the low end of the presumptive range. Luckart now contends that, because the three-judge panel did not expressly restrict his eligibility for discretionary parole when it announced this 14–year sentence, Luckart should be able to apply for discretionary parole after serving one-quarter of this reduced sentence—so that, conceivably, he might be released from prison after serving as little as 3 ½ years.

For the reasons explained in this opinion, we reject Luckart's contention about his parole eligibility. The discretionary parole statute, AS 33.16.090(b), does indeed recognize the three-judge panel's authority to grant expanded parole eligibility to certain defendants. But unless the panel expressly exercises this authority, a defendant's eligibility for discretionary parole remains governed by the rules codified in that statute. In Luckart's case, his eligibility for discretionary parole is governed by AS 33.16.090(b)(2), and he therefore is not eligible to apply for discretionary parole until he has served the 14 years, less good time credit.

*A general overview of Alaska's presumptive sentencing statutes*

The Alaska Legislature has enacted presumptive sentencing ranges for most of the felony offenses defined in Title 11 of the Alaska Statutes.

(Certain serious felonies defined in Title 11 are not covered by the presumptive sentencing laws; the sentencing ranges for these offenses are set forth in AS 12.55.125(a) and (b). And the presumptive sentencing laws do not apply to non classified felony offenses. By "non-classified", we mean felony offenses defined in titles other than Title 11 that the Legislature has not classified as class A, class B, or class C felony offenses.)

For felonies that *are* governed by the presumptive sentencing laws, the applicable presumptive range for any given offense is contained in one of four subsections of AS 12.55.125: subsection (i) (covering sexual felonies), subsection (c) (covering all other class A felonies), subsection (d) (covering all other class B felonies), and subsection (e) (covering all other class C felonies).

A fifth subsection of AS 12.55.125—subsection (g)—declares that when a defendant is sentenced under one of the these four presumptive sentencing provisions (*i.e.*, "[when] a defendant is sentenced under (c), (d), (e), or (i) of [AS 12.55.125]"), the defendant's term of imprisonment can not be suspended or

**3.** *Ibid.*

otherwise reduced below the low end of the applicable presumptive range "except to the extent permitted under AS 12.55.155—12.55.175".

This trio of statutes—AS 12.55.155, 165, and 175—contains the rules that authorize the superior court to impose felony sentences outside the presumptive sentencing ranges specified in AS 12.55.125.

AS 12.55.155 contains a list of aggravating and mitigating circumstances which, if proved, authorize an individual sentencing judge to impose a sentence that either exceeds or falls below the applicable presumptive range. In cases where the sentencing judge concludes that, even after the adjustments allowed by AS 12.55.155, the defendant's sentence would still be manifestly unjust, AS 12.55.165 authorizes the judge to refer the defendant's case to the statewide three-judge sentencing panel.

The three-judge panel's sentencing authority is defined in AS 12.55.175. If the three-judge panel agrees with the individual sentencing judge that it would be manifestly unjust to sentence the defendant within the normal presumptive sentencing rules (even after the adjustments allowed by AS 12.55.155), the three-judge panel has the authority (with a few exceptions) "[to] sentence the defendant to any definite term of imprisonment" within the entire range of sentences established by the Legislature for that offense.

*A preliminary matter: the distinction between "presumptive" sentences and "non-presumptive" sentences*

Before we begin our detailed discussion of the legal issues presented in Luckart's case, we must first address a preliminary matter. Throughout their briefs to this Court, both Luckart and the State speak of two distinct types of prison sentences: "presumptive" sentences (or "presumptive" terms of imprisonment), versus "non presumptive" sentences (or "non-presumptive" terms of imprisonment).

The parties use the term "presumptive sentence" as meaning a term of imprisonment during which the defendant is not eligible to apply for discretionary parole; they use the term "non-presumptive sentence" as meaning a term of imprisonment during which the defendant *is* eligible to apply for discretionary parole.

This Court introduced this terminology—"presumptive sentences" and "non-presumptive sentences"—in our early decisions construing Alaska's presumptive sentencing statutes.[4] And this distinction is a useful one when it comes to distinguishing between (1) sentences that are governed by the presumptive sentencing provisions of AS 12.55.125—175, versus (2) sentences that are not governed by those provisions.

But the distinction between "presumptive sentences" and "non-presumptive sentences" is not as useful—indeed, it can be misleading—when the issue is a defendant's eligibility for parole. The presumptive sentencing provisions of AS 12.55.125 do not speak of parole eligibility. They neither confer nor restrict it. Instead, a defendant's eligibility for discretionary parole is governed by the provisions of AS 33.16.090.

Under AS 33.16.090(b), the question of whether, or when, a defendant becomes eligible to apply for discretionary parole does not hinge directly on whether the defendant received a "presumptive sentence"—*i.e.,* whether the defendant's sentence was governed by the presumptive sentencing statutes, AS 12.55.125—175. Rather, a defendant's parole eligibility hinges on several factors. These factors are:

(1) whether the defendant received a single sentence or two or more sentences;

(2) whether one or more of the defendant's sentences was imposed under AS 12.55.125(a) or (b)—that is, the defendant was sentenced for one of the unclassified felonies where sentencing is *not* governed by presumptive sentencing;

(3) whether the sentencing judge exercised their authority under AS 12.55.115 to

---

4. *See, e.g., Juneby v. State,* 641 P.2d 823, 831–33 & n. 15 (Alaska App.1982); *Lacquement v. State,* 644 P.2d 856, 859 (Alaska App.1982); *Kimbrell v. State,* 647 P.2d 618, 621 n. 10 (Alaska App.1982); *Peetook v. State,* 655 P.2d 1308, 1310 (Alaska App.1982).

specially restrict the defendant's eligibility for discretionary parole; and

(4) whether one or more of the defendant's sentences was imposed under AS 12.55.125(c), (d), (e), or (i)—that is, the defendant was sentenced for a felony where sentencing *is* governed by presumptive sentencing—and, if so, whether the imposed term of imprisonment is above, within, or below the applicable presumptive range.

Under the provisions of AS 33.16.090(b), many defendants who receive "presumptive sentences" (*i.e.*, sentences governed by the presumptive sentencing provisions of AS 12.55.125) remain eligible for discretionary parole. Subsection (b)(2) of the statute—the subsection that restricts eligibility for discretionary parole until the defendant becomes eligible for mandatory parole—only applies to the most serious felonies covered by presumptive sentencing.

By its terms, the parole restriction in (b)(2) applies only to (1) all defendants who are sentenced under 125(i) for a sexual felony, (2) all defendants who are sentenced under 125(c) for any other class A felony, (3) second and third felony offenders who are sentenced under 125(d)(2)—(d)(4) for any other class B felony, and (4) third felony offenders who are sentenced under 125(e)(3)—(e)(4) for any other class C felony.

Thus, all other felony defendants who receive a presumptive sentence—in other words, first felony offenders sentenced for a class B felony, as well as first and second felony offenders sentenced for a class C felony—are covered by the parole eligibility rule found in AS 33.16.090(b)(5). Even though these defendants have received a "presumptive sentence" (*i.e.*, a sentence governed by the presumptive sentencing provisions of AS 12.55.125—175), they are eligible to apply for discretionary parole after serving one-fourth of their sentence.

(This same "one-fourth of the sentence" parole eligibility rule applies to defendants convicted of the non-classified felonies defined in titles other than Title 11, whose sentences are not governed by the provisions of AS 12.55.125—175. Some examples are defendants convicted of leaving the scene of an injury accident, AS 28.35.060(c), and defendants convicted of fraudulently retaining more than $1000 in ticket receipts after a concert has been canceled, AS 08.92.060(b).)

In addition, all defendants who receive two or more presumptive sentences are eligible for discretionary parole after they fully serve their primary sentence (reduced by good time credit) plus one-fourth of their remaining sentences. *See* AS 33.16.090(b)(7)(C). Thus, even though all of the defendant's sentences are "presumptive", the defendant is eligible for discretionary parole when serving the second and subsequent sentences.

■ In sum, there is no direct relationship between a defendant's receiving a "presumptive" sentence and a defendant's eligibility (or lack of eligibility) for discretionary parole. Under AS 33.16.090(b), the fact that a defendant has received one or more presumptive sentences is just one of the factors that must be assessed when determining whether, or when, the defendant will become eligible to apply for discretionary parole.

Therefore, even though this Court has sometimes used the phrases "presumptive sentence" and "non-presumptive sentence" when we meant to refer to a defendant's eligibility for parole (or lack of eligibility for parole), this usage is a legal shorthand, and it is not completely accurate.

There are indeed "presumptive sentences" and "non-presumptive sentences"—in the sense that there are sentences which are imposed under the presumptive sentencing provisions of AS 12.55.125—175, and sentences which are not imposed under those presumptive sentencing provisions. But "presumptive sentence" does not mean "sentence with no eligibility for discretionary parole".

■ As we are about to explain in the next section of this opinion, the three-judge panel has the authority to grant enhanced parole eligibility to defendants who are subject to presumptive sentencing. But sentencing judges—even the judges of the statewide three-judge sentencing panel—have no discretion when it comes to categorizing a defendant's sentence as "presumptive" or "non-

presumptive".[5] Rather, this classification of sentences is governed by statute.

By definition, *any* case that comes before the three-judge panel is a case that involves a "presumptive" sentence (*i.e.*, a sentence imposed under the provisions of AS 12.55.125—175)—because the three-judge panel's sole function is to review (and potentially relax or exceed) the sentences required under the presumptive sentencing statutes.

*Why we conclude that the three-judge panel has the authority to expand a defendant's eligibility for discretionary parole*

■ As we noted earlier in this opinion, Luckart's original sentencing judge concluded that it would be manifestly unjust to sentence Luckart to a term of imprisonment within the applicable presumptive range (25 to 35 years' imprisonment) unless Luckart was granted expanded eligibility for discretionary parole. The three-judge panel declined to go along with the judge's suggestion because the panel concluded that it had no authority to expand Luckart's eligibility for parole.

The three-judge panel reached this conclusion by comparing two provisions of AS 12.55.175: subsection (c) and subsection (e).

The first provision—subsection (c)—declares that the three-judge panel "may in the interest of justice sentence the defendant to any definite term of imprisonment up to the maximum term provided for the offense or to any sentence authorized under AS 12.55.015."

(AS 12.55.015 is the statute that lists all of a court's sentencing options, including suspending all or part of a sentence of imprisonment, or allowing the defendant to serve the term of imprisonment periodically, or ordering the defendant to engage in community service.)

■ Since 1980, when presumptive sentencing first took effect,[6] this Court has consistently construed AS 12.55.175(c) to mean that, when justice requires, the three-judge panel has the authority to impose a sentence free of the restrictions that normally govern presumptive sentencing—including the authority to expand a defendant's eligibility for discretionary parole. *See Kirby v. State*, 748 P.2d 757, 765 (Alaska App.1987); *State v. Ridgway*, 750 P.2d 362, 364 (Alaska App. 1988); and *Sikeo v. State*, 258 P.3d 906, 909 (Alaska App.2011).

Indeed, the three-judge panel has itself construed AS 12.55.175(c) in this same manner (in cases that did not end up being appealed). Although the three-judge panel apparently does not maintain a public archive of its decisions, the Alaska Judicial Council has published short summaries of the panel's decisions. These summaries contain instances where the three-judge panel announced that it was imposing a "non presumptive" sentence—meaning that the panel intended for the defendant to be eligible for discretionary parole under the rules that applied to non-presumptive sentences.

And in the parole eligibility statute, AS 33.16.090, the Alaska Legislature has likewise acknowledged the three-judge panel's authority to expand a defendant's eligibility for discretionary parole. The portion of this statute that deals with defendants who receive a single sentence within or below the applicable presumptive range—AS 33.16.090(b)(2)—declares that these defendants are not eligible to apply for discretionary parole until they have served their entire sentence minus good time credit, *unless* "[they have] been allowed by the three-judge panel under AS 12.55.175 to be considered for discretionary parole release".

■ But when the three-judge panel considered Luckart's case, the panel focused on a second provision of AS 12.55.175—subsection (e). This subsection deals with cases where the three-judge panel concludes (1) that the defendant has an exceptional potential for rehabilitation, and (2) that, because of the defendant's rehabilitative potential, the defendant should receive a term of imprisonment below the applicable presumptive range (even after this range is adjusted downward

---

**5.** *See Reyes v. State*, 978 P.2d 635, 641 (Alaska App.1999).

**6.** *See* SLA 1978, ch. 166, § 25.

for the mitigating factor under the rules specified in AS 12.55.155(a)).[7],[8]

AS 12.55.175(e) limits the three-judge panel's authority in such cases. The statute directs the panel (1) to sentence the defendant *within* the adjusted applicable range (even though the panel has concluded that a lesser sentence is warranted), and (2) to order the defendant to engage in appropriate rehabilitative programs. Having imposed such a sentence, the panel may then provide "that the defendant is eligible for discretionary parole ... during the second half of the sentence ... if the defendant successfully completes all rehabilitation programs ordered [by the panel]."

At first blush, it would seem that subsection (e) of AS 12.55.175 has nothing to do with Luckart's case. (Luckart's case was not referred to the panel on the basis of exceptional potential for rehabilitation, nor did the panel think that Luckart should receive a sentence of less than 12 ½ years—since the panel sentenced him to serve 14 years.)

But the three-judge panel construed subsection (e) as standing for a broad limitation on its sentencing authority in all cases *not* covered by subsection (e). The panel reasoned that, because the Legislature explicitly granted them the authority to expand a defendant's eligibility for discretionary parole under the circumstances described in subsection (e), the panel must *lack* this same authority in all other situations.

As both Luckart and the State point out in their briefs to this Court, the three-judge panel drew an incorrect inference from the Legislature's enactment of subsection (e). There is nothing in the legislative history of subsection (e) to suggest that the Legislature wished to strip the three-judge panel of its traditional authority to expand a defendant's eligibility for discretionary parole. Rather, the Legislature wanted to *restrict* that authority in a certain group of cases—cases that were referred to the panel on the basis of a defendant's exceptional potential for rehabilitation.

Specifically, the Legislature was worried that sentencing judges were placing too much emphasis on a defendant's *potential* for rehabilitation (as opposed to demonstrated progress toward rehabilitation), and thus were reducing sentences based solely on unproven predictions that the defendant would be rehabilitated.

During the legislative hearings on House Bill 396—the bill that eventually was enacted as SLA 1992, ch. 79, § 28, and is now AS 12.55.175(e)—Committee Counsel Laurie Otto described the purpose of the bill to the House Judiciary Committee. Ms. Otto explained that when defendants came before the three-judge panel based on a finding of exceptional potential for rehabilitation, the then-existing version of AS 12.55.175 allowed the panel to reduce the defendants' sentences and relax the normal parole restrictions based only on this speculative potential for rehabilitation. Ms. Otto argued that any expansion of these defendants' parole eligibility should be contingent on the defendants' successful demonstration of progress toward rehabilitation—so that parole eligibility could be used as an incentive to rehabilitation, and so that, by the time the Parole Board was asked to evaluate the defendants' applications for discretionary parole, the Board would have a track record in front of them.[9]

---

7. This interpretation of AS 12.55.175(e) is not obvious from its language—but based on the legislative history of the statute, as well as the State of Alaska's concession that this is what the Legislature intended the statute to mean, we construed the statute this way in *Garner v. State*, 266 P.3d 1045, 1049 (Alaska App.2011).

8. AS 12.55.155(a) declares that when the low end of the applicable presumptive range is 4 years or less, the proof of mitigating factors authorizes the sentencing court to impose any lesser sentence; but when the low end of the applicable presumptive range exceeds 4 years'

imprisonment, a sentencing court can only adjust the presumptive range by 50 percent for mitigating factors. In other words, defendants in those latter cases can receive a sentence below the presumptive range, but the defendant's term of imprisonment must equal at least 50 percent of the normal low end of the range.

9. Ms. Otto's full discussion of this portion of the bill is found in the audio record of the House Judiciary Committee meeting of January 15, 1992, at approximately one hour and ten minutes into the meeting.

In other words, the Legislature enacted AS 12.55.175(e) under the assumption that the three-judge panel already had the authority to expand a defendant's eligibility for discretionary parole, and the purpose of subsection (e) was to restrict that authority in the specific circumstances described in the statute.

For these reasons, we reject the three-judge panel's interpretation of AS 12.55.175(e). We reaffirm our previous position that subsection (c) of AS 12.55.175 gives the three-judge panel the authority to expand a defendant's eligibility for discretionary parole (unless that authority is limited by another statutory provision); and we hold that subsection (e) of the statute only restricts the panel's authority in the circumstances described in that subsection.

*An explanation of the provisions of AS 33.16.090(b)—the rules governing a defendant's eligibility for discretionary parole*

As we explained at the beginning of this opinion, the three-judge panel concluded that it would be unjust to sentence Luckart to a term of imprisonment within the applicable presumptive range of 25 to 35 years, but the panel also concluded that it had no authority to follow the sentencing judge's suggestion of granting Luckart enhanced eligibility for discretionary parole. So, instead, the panel sentenced Luckart to a term of imprisonment well below the applicable range: 25 years with 11 years suspended (14 years to serve).

Luckart argues that, because the three-judge panel did not expressly restrict his eligibility for discretionary parole when it announced this 14–year sentence, Luckart should be able to apply for discretionary parole after serving one-quarter of this reduced sentence (*i.e.*, 3 ½ years).

In order to explain why we reject Luckart's argument, we must present a detailed explanation of the statute governing parole eligibility, AS 33.16.090.

With a few exceptions (the exceptions listed in AS 33.16.090(a)), any prisoner who is sentenced to serve at least 181 days is eligible to apply for discretionary parole under the provisions of AS 33.16.090(b), unless the sentencing judge has specially restricted the defendant's parole eligibility under AS 12.55.115.

AS 33.16.090(b) is divided into seven subsections. The first five subsections define the parole eligibility of defendants who receive only one sentence, depending on which statutory provisions governed the sentencing. The sixth subsection deals with defendants who receive more than one sentence, but whose sentences are wholly concurrent. The seventh subsection deals with defendants who receive more than one sentence, and whose sentences are either wholly or partially consecutive.

We will now take a more detailed look at the five subsections that apply to defendants who receive a single sentence.

Subsection (1) applies to defendants who are sentenced for one of the serious felonies in Title 11 that are not covered by presumptive sentencing—the felonies listed in AS 12.55.125(a) and (b).

Subsections (2), (3), and (4) deal with defendants whose sentencing is governed by the presumptive sentencing statutes, AS 12.55.125—175. We are about to discuss these three subsections at some length. For present purposes, it is important to note that subsections (2), (3), and (4) do not cover *all* defendants who are subject to presumptive sentencing. The language of these three subsections expressly excludes defendants who are sentenced under AS 12.55.125(d)(1) or under AS 12.55.125(e)(1)—(2)—in other words, first felony offenders convicted of a class B felony, and first and second felony offenders convicted of a class C felony.

Subsection (5) is the residual provision; it applies to defendants who are sentenced "under any other provision of law". This residual category includes all defendants who are not subject to presumptive sentencing and who are not covered by subsection (1)—*i.e.*, all defendants who are sentenced for a misdemeanor, or for a non-classified felony defined in a title of the statutes other than Title 11.

This residual category also includes the defendants who are subject to presumptive sentencing but who are *not* covered by sub-

sections (2), (3), or (4)—specifically, first felony offenders convicted of a class B felony, and first and second felony offenders convicted of a class C felony.

We now return to subsections (2), (3), and (4). We will address these subsections slightly out of sequence, to make the explanation more logical.

Subsection (2) actually applies to two distinct groups of defendants. The first group included in subsection (2) comprises those defendants who receive a single sentence *within* the applicable presumptive range set out in AS 12.55.125(i), 125(c), 125(d)(2)—(4), or 125(e)(3)—(4), and who "[have] not been allowed by the three-judge panel under AS 12.55.175 to be considered for discretionary parole release"—either because their case was not referred to the three-judge panel at all, or because their case was referred to the three-judge panel but the panel declined to grant them expanded parole eligibility.

The second group included in subsection (2) comprises those defendants who, because of mitigating factors, receive a single sentence *below* the applicable presumptive sentencing range—either because the original sentencing judge was authorized by AS 12.55.155(a) to impose this lesser sentence, or because the case was referred to the three-judge panel and the panel imposed the lesser sentence—and who "[have] not been allowed by the three-judge panel under AS 12.55.175 to be considered for discretionary parole release" (again, either because their case was not referred to the three-judge panel at all, or because their case was referred to the three-judge panel but the panel declined to grant them expanded parole eligibility).

All of the defendants covered by subsection (2) are not eligible for discretionary parole "until [they have] served the term imposed, less good time [credit accrued] under AS 33.20.010".

(As a practical matter, any defendant who has served their composite term of imprisonment, less accrued good time credit, *must* be released—either on mandatory parole or unconditionally—pursuant to AS 33.20.040(a). Thus, the eligibility for discretionary parole granted by AS 33.16.090(b)(2) is moot unless the defendant is serving other sentences as well. *See* AS 33.16.090(b)(6)—(b)(7).)

Subsection (4) covers defendants who, because of aggravating factors, receive a single sentence *above* the applicable presumptive range. These defendants are eligible for discretionary parole after they have served an amount of time equal to (1) the upper end of the applicable presumptive range (less accrued good time credit), plus (2) one-fourth of the portion of the sentence that exceeds the upper end of the presumptive range.

Finally, subsection (3) applies to defendants who receive a single presumptive sentence and who *have* been granted expanded parole eligibility by the three-judge panel under AS 12.55.175. These defendants are eligible for discretionary parole after "[they have] served that portion of [their] active term of imprisonment required by the three-judge panel", but only if the Parole Board determines that they have "successfully completed all rehabilitation programs ordered by the three-judge panel that were made available to [them]", and that they "would not constitute a danger to the public if released on parole".

The actual wording of subsection (3) suggests that the statute has a slightly different scope, so we must pause here to engage in some statutory interpretation.

■ According to its wording, AS 33.16.090(b)(3) applies to defendants who (1) receive "a single sentence under AS 12.55.125(c), (d)(2)—(4), (e)(3) and (4), or (i)", and who (2) are "allowed by the three-judge panel under AS 12.55.175 to be considered for discretionary parole release *during the second half of the sentence*".

This italicized language echoes the restriction contained in AS 12.55.175(e)—the provision that limits the three-judge panel's sentencing authority when a case is referred to them on the basis of the defendant's exceptional potential for rehabilitation. As we explained in the preceding section of this opinion, AS 12.55.175(e) limits the three-judge panel's normal authority to grant expanded parole eligibility to these defendants: the panel can only grant parole eligibility during the second half of the defendant's sentence.

It appears that the "second half of the sentence" language in AS 33.16.090(b)(3) is an inadvertent holdover from a prior version of AS 33.16.090 that was enacted in conjunction with AS 12.55.175(e).

In 1992, the Legislature enacted both AS 12.55.175(e) and a corresponding provision of AS 33.16.090, which the Legislature codified as subsection (e) of that statute. See SLA 1992, ch. 79, §§ 28 and 32 (respectively). This now-repealed AS 33.16.090(e) declared that a defendant could be eligible for discretionary parole during the second half of a sentence imposed under AS 12.55.175(e) if the three-judge panel authorized the parole eligibility, and if the defendant successfully completed any rehabilitation programs ordered by the panel (and if the defendant would not pose a danger to the public).

But in 2005, the Legislature rewrote AS 33.16.090. See SLA 2005, ch. 2, § 28. In this 2005 revision, the Legislature repealed AS 33.16.090(e) and, in its place, enacted the provision that is currently AS 33.16.090(b)(3).

Subsection (b)(3) of the statute no longer speaks of the parole eligibility granted by the three-judge panel under AS 12.55.*175(e)*. Rather, the statute now speaks more generally of any parole eligibility granted by the three-judge panel under AS 12.55.*175*. That is, the new version of the statute apparently applies regardless of whether the three-judge panel grants parole eligibility under the special provisions of 175(e) or, instead, the panel exercises its traditional authority to expand a defendant's parole eligibility under subsection 175(c).

But if this is so—if the statute was meant to apply to cases where the three-judge panel exercises its traditional authority under AS 12.55.175(c) to expand a defendant's parole eligibility—then the "second half of the sentence" language would appear to be an unintended remnant of the former statute. There is nothing in the legislative history from 2005 to suggest that the Legislature wished to impose a new and comprehensive restriction on the three-judge panel's authority to grant expanded parole eligibility under AS 12.55.175(c).

We acknowledge that there is an alternative possibility: the possibility that the Legislature inadvertently substituted "AS 12.55.175" for the older reference to "AS 12.55.175(e)"—in other words, that the Legislature dropped the "(e)" by mistake. Under this reading, the reference to the "second half of the [defendant's] sentence" makes sense, because this is the very limitation on the three-judge panel's authority that is codified in AS 12.55.175(e).

But if we interpreted AS 33.16.090(b)(3) in this manner, it would leave a gap in AS 33.16.090(b) as a whole. The statute would no longer contain any provision that applied to cases where the three-judge panel exercised its traditional authority to expand a defendant's eligibility for parole under AS 12.55.175(c).

For this reason, we conclude that the change from "AS 12.55.175(e)" to "AS 12.55.175" *was* intentional, and that the continued inclusion of the "second half of the sentence" language was not. We hold that AS 33.16.090(b)(3) should be read without this "second half of the sentence" language—although this limitation still applies to the cases covered by AS 12.55.175(e).

*Luckart's argument concerning his eligibility for discretionary parole, and why we reject it*

■ We now return to Luckart's contention that, because the three-judge panel was silent on the question of his eligibility for discretionary parole when the panel sentenced him to serve 14 years in prison, he is eligible to apply for parole after serving one-fourth of this sentence (*i.e.*, 3 ½ years).

Luckart's argument is based on a particular reading of the Alaska presumptive sentencing statutes. Specifically, Luckart argues that when the three-judge panel accepts a referral from the trial court and imposes the defendant's sentence itself, the defendant's sentence is no longer a "presumptive sentence", and thus the defendant's sentence is not subject to the restrictions on parole eligibility that apply to presumptive sentences. Instead, Luckart argues, his parole eligibility is governed by AS 33.16.090(b)(5)— the provision that speaks of defendants who

are sentenced under "any other provision of law".

We reject this argument for two reasons.

■ Our first reason for rejecting Luckart's argument is that, as we explained earlier in this opinion, *all* sentences imposed under the presumptive sentencing statutes (AS 12.55.125—175) are "presumptive" sentences—and this includes sentences imposed by the three-judge panel.

Luckart, for example, was convicted of attempted first-degree sexual assault. This is one of the felonies listed in AS 12.55.125(i)—specifically, in 125(i)(2). AS 12.55.125(i) declares that defendants convicted of the felonies listed in that statute must be sentenced to a term of imprisonment within the applicable presumptive range, "subject to adjustment as provided in AS 12.55.155—12.55.175".

AS 12.55.155 is the statute that allows an individual sentencing judge to exceed the upper limit of the presumptive range based on aggravating factors, or to impose a sentence below the lower limit of the presumptive range based on mitigating factors. But the resulting sentence is still a "presumptive" sentence; it is imposed under the provisions of AS 12.55.125, since AS 12.55.125 expressly allows for sentence adjustments under AS 12.55.155.

Similarly, AS 12.55.165 and 175 are the statutes that allow an individual sentencing judge to refer a case to the statewide three-judge sentencing panel, and that authorize the three-judge panel to impose a sentence outside the normal constraints on an individual sentencing judge's authority—the constraints imposed by AS 12.55.125 and AS 12.55.155. But again, the resulting sentence is still a "presumptive" sentence—a sentence imposed under the provisions of the presumptive sentencing laws, since AS 12.55.125 expressly allows for this type of sentence adjustment by the three-judge panel.

Thus, Luckart was not sentenced under some provision of law apart from the presumptive sentencing statutes. His sentence was imposed in accordance with the presumptive sentencing statutes, and his parole eligibility was therefore governed by AS 33.16.090(b)(2)—(4), not AS 33.16.090(b)(5).

Our second reason for rejecting Luckart's argument is that, as we explained earlier in this opinion, there is no direct relationship between whether a defendant's sentence is a "presumptive sentence" and whether the defendant is eligible to apply for discretionary parole while serving this sentence.

The rules governing parole eligibility are not contained in the presumptive sentencing statutes. Rather, those rules are found in AS 33.16.090. And under AS 33.16.090, parole eligibility hinges on a group of factors. This statute recognizes the three-judge panel's authority to expand a defendant's eligibility for discretionary parole. But the bare fact that a defendant was sentenced by the three-judge panel is not a factor that affects parole eligibility.

In cases where the defendant's sentencing is governed by the presumptive sentencing statutes, the defendant's ultimate eligibility for discretionary parole hinges on several factors: (1) whether the defendant's sentence was below, within, or above the applicable presumptive range, (2) whether the defendant received more than one sentence, and (3) whether the three-judge panel affirmatively granted the defendant an expanded eligibility for discretionary parole.

Only this last factor falls within the exclusive province of the three-judge panel. The other two factors will be present in all presumptive sentencing cases, regardless of whether the defendant was sentenced by an individual sentencing judge or by the three-judge panel.

For these reasons, we reject Luckart's argument that his parole eligibility is governed by the provisions of AS 33.16.090(b)(5). In fact, his eligibility for discretionary parole is governed by the provisions of AS 33.16.090(b)(2)—because he was subject to presumptive sentencing, because he received a sentence below the applicable presumptive range, and because the three-judge panel did not grant him expanded eligibility for parole.

### Conclusion

We hold that AS 12.55.175(c) gives the three-judge panel the authority to expand a defendant's eligibility for discretionary parole unless that authority is restricted by some other statutory provision. We further hold that the mere fact that the three-judge panel sentences a defendant does not alter the defendant's eligibility for discretionary parole. Rather, when the three-judge panel sentences a defendant who is subject to one of the presumptive ranges specified in AS 12.55.125(i), 125(c), 125(d)(2)—(4), or 125(e)(3)—(4), the defendant's eligibility for parole is governed by subsections (2)—(4) of AS 33.16.090(b)—or, if the defendant receives two or more sentences, by subsections (6)—(7) of that statute.

 The remaining question is whether we should direct the three-judge panel to reconsider Luckart's sentence, now that we have clarified the panel's authority to expand a defendant's eligibility for discretionary parole.

As we explained earlier, Luckart's original sentencing judge referred his case to the three-judge panel because the judge believed that a sentence within the applicable presumptive range (25 to 35 years) would be unjust unless Luckart was made eligible for discretionary parole. The three-judge panel did not follow this suggestion because the panel mistakenly concluded that it had no authority to expand Luckart's eligibility for parole. Instead, the panel gave Luckart a sentence below the presumptive range—a sentence of 14 years to serve (25 years with 11 years suspended).

Given the fact that Luckart has already received this reduced sentence, it might seem unlikely that the three-judge panel would now also expand Luckart's eligibility for parole. Nevertheless, we believe that the safer path is to give the three-judge panel an opportunity to consider this issue.

We therefore remand Luckart's case to the three-judge panel once more, so that the panel can consider the question of whether to grant Luckart expanded eligibility for discretionary parole. We express no opinion as to what decision the three-judge panel should make on this issue.

We do not retain jurisdiction of this case.