Frederick E. LEPLEY, Appellant,

v.

STATE of Alaska, Appellee.

No. A–3436.

Court of Appeals of Alaska.

March 15, 1991.

R. Scott Taylor, Asst. Public Defender, and John B. Salemi, Public Defender, Anchorage, for appellant.

Virginia Bonnie Lembo, Asst. Dist. Atty., Mary Anne Henry, Acting Dist. Atty., Anchorage, and Douglas B. Baily, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and MANNHEIMER, JJ.

MANNHEIMER, Judge.

Frederick E. Lepley was indicted for both first- and second-degree sexual abuse of his stepdaughter, J.Y. Lepley pleaded no contest to first-degree sexual abuse of a minor, and the second-degree sexual abuse charge was dismissed. As a first felony offender, Lepley faced an 8–year presumptive term of imprisonment. AS 12.55.-125(i)(1).

Lepley proposed the mitigating factor that his conduct was "among the least serious ... included in the definition of the offense", AS 12.55.155(d)(9). Superior Court Judge Peter A. Michalski found that Lepley had failed to prove this mitigating factor. Lepley also asked that his case be referred to the three-judge sentencing panel; he asserted that he had extraordinarily good potential for rehabilitation, AS 12.55.-165; *Smith v. State*, 711 P.2d 561 (Alaska App.1985). Judge Michalski found that Lepley had failed to prove this non-statutory mitigator. Accordingly, Judge Michalski imposed the 8–year presumptive term.

On appeal, Lepley challenges the superior court's rejection of his proposed mitigator, "least serious conduct". Lepley also argues that he successfully demonstrated an extraordinary potential for rehabilitation and that therefore Judge Michalski should have referred his case to the three-judge sentencing panel. We affirm Lepley's sentence.

Lepley engaged in escalating sexual misconduct with his nine-year-old stepdaughter between January and June, 1987. Lepley was forty years old at the time.

On a number of occasions, Lepley would enter the bathroom while his stepdaughter was showering and watch her. He spoke at length to his stepdaughter about his sexual life with the girl's mother. Lepley took to entering J.Y.'s bedroom either naked or wearing only a bathrobe, which he would discard after he entered the room. He would lie down on the girl's bed, put a condom on his penis, and tell her how much women liked it when he put his penis inside of them.

On several occasions, Lepley had his stepdaughter manually masturbate him until he ejaculated. And one time Lepley forced J.Y. to perform fellatio on him, overcoming her reluctance by hitting her in the head until she complied with his request.

In June, 1987, Lepley moved to Virginia to take a new job. Three months later, his wife and children joined him. Lepley never recommenced his sexual abuse of J.Y. However, Lepley's relationship with his wife and children deteriorated. In October, 1987, Lepley and his wife sought professional counseling because of problems they were having with their twelve-year-old son. It quickly became evident that the root of these problems was the Lepleys' poor marital relationship, so they entered family counseling. At some point during the summer of 1988, Lepley admitted to the counsellor, Sarah Thilbault, that he had sexually abused J.Y. However, Lepley told Thil-

bault that his stepdaughter was partially to blame: Lepley asserted that J.Y. had been watching X-rated movies and therefore the girl had not resisted him as she should have.

Later, Lepley terminated his counseling sessions with Thilbault. The family situation did not improve. In late 1988, Katherine Lepley found her daughter J.Y. with a razor; J.Y. told her mother she "[couldn't] live like this any more". Mrs. Lepley took the children and returned to Alaska. When she applied for welfare benefits, she was asked to fill out a questionnaire. One of the questions asked whether there had been any sexual abuse in the family unit. Katherine Lepley's response to this question led to the investigation and prosecution of the charges against Lepley.

### A. The Mitigating Factor of "Least Serious Conduct"

■ Contending that the conduct underlying his crime was among the least serious conduct encompassed by first-degree sexual abuse of a minor, Lepley argues that fellatio does not involve penetration of either the genitals or the anus, and thus it is not a true physical penetration like the other types of "penetration" defined in AS 11.81.900(b)(53). Rather, Lepley argues, fellatio is only a "de jure" penetration.

As a court of law, we must apply the statutory law as it has been given us by the legislature. For purposes of applying the first-degree sexual abuse of a minor statute, there is no type of penetration other than "de jure" penetration. The statute defining "sexual penetration", AS 11.81.900(b)(53), declares that fellatio is one form of sexual penetration; that ends the debate.

In *Murray v. State*, 770 P.2d 1131, 1138–39 (Alaska App.1989), we held that fellatio and cunnilingus are validly classed as "sexual penetration" under AS 11.81.900(b)(53) even though these acts do not require physical penetration of the mouth or genitals. *Compare State v. Erickson*, 574 P.2d 1, 16 (Alaska 1978), holding that cocaine was a "narcotic" drug for purposes of classification and punishment under former provi-

sions of Title 17 (Alaska's food and drug code), even though cocaine is concededly not a "narcotic" for pharmacological purposes.

If Lepley is asserting that fellatio is, by its nature, a less serious form of sexual misconduct than the other types of sexual penetration listed in AS 11.81.900(b)(53), we have rejected similar arguments several times. In *Adams v. State*, 718 P.2d 164, 166–67 (Alaska App.1986), and *Walsh v. State*, 677 P.2d 912, 916–17 (Alaska App. 1984), we held that when the legislature has defined several methods of committing the same crime, each method is deemed of equal seriousness with the others. In *Benboe v. State*, 698 P.2d 1230, 1232, n. 4 (Alaska App.1985), we specifically held that all forms of sexual penetration defined in AS 11.81.900(b)(53) are presumed equally culpable. Thus, in *Benboe* we rejected the argument that digital penetration is per se a "least serious" type of sexual penetration.

To the extent Lepley is expressing his view that the Alaska Legislature made an unwise choice when they decided to punish fellatio as severely as the other types of sexual abuse listed in AS 11.81.900(b)(53), his arguments are addressed to the wrong forum.

■ Lepley also argues that his conduct, and fellatio in general, is a "least serious" form of sexual penetration because, unlike either penile or digital penetration of the genitals or anus, there is practically no risk of physical injury to the victim. In making this argument, Lepley relies upon a passage from *Benboe*. In *Benboe*, among a list of mitigating factors, we included the fact that "only relatively slight physical injury was caused by [the defendant's] conduct". 698 P.2d at 1232. But Lepley has taken this passage from *Benboe* out of context.

The defendant in *Benboe* had pleaded no contest to a charge of second-degree sexual assault (sexual contact with a minor—what would now be second-degree sexual abuse of a minor). However, the facts of the offense showed that he had actually digital-

ly penetrated the victim. The sentencing judge properly viewed Benboe's offense as among the "most serious" within the definition of second-degree sexual abuse because the defendant's conduct in fact constituted first-degree sexual abuse. *Benboe*, 698 P.2d at 1231. However, the judge then imposed a sentence of 7 years to serve—one short of the presumptive 8–year term for first-degree sexual abuse.

On appeal, we agreed with the state that, because Benboe's offense was aggravated, the superior court had been authorized to impose a sentence exceeding the 4–year presumptive term for a second felony offender convicted of a class B felony. *Benboe*, 698 P.2d at 1231–32. *See Austin v. State*, 627 P.2d 657 (Alaska App.1981). However, we also agreed with Benboe that there was inadequate justification for a 7–year term of imprisonment—a prison sentence that exceeded even the 6–year presumptive term for a third felony offender convicted of a class B felony. We pointed out that, if Benboe's offense were evaluated as first-degree sexual abuse of a minor (i.e., as sexual penetration), it appeared to be of less-than-average seriousness:

> The assault was unplanned and was of extremely brief duration. At most, the assault involved only slight digital penetration. Benboe never threatened R.E.W., and he voluntarily terminated the assault as soon as R.E.W. protested. Only relatively slight physical injury was caused by Benboe's conduct, and evidently R.E.W. suffered no lasting emotional harm.
>
> Given these mitigating aspects, we believe Benboe's offense, if viewed as a first-degree sexual assault, would be among the least serious in its class.

*Benboe*, 698 P.2d at 1232 (footnote omitted).

As can be seen, our discussion of these "mitigating aspects" occurred in the context of deciding how much weight the superior court could legitimately give to the aggravating factor of "most serious conduct"—how much a first offender's term of imprisonment could legitimately exceed the presumptive term for a second offender.

This language from *Benboe* does not mean that a defendant convicted of first-degree sexual assault or first-degree sexual abuse of a minor can claim his offense is "among the least serious" because he inflicted little or no physical injury upon his victim. Such an interpretation of *Benboe* would place it at odds with the supreme court's decision in *Woods v. State*, 667 P.2d 184, 187–88 (Alaska 1983), where the supreme court held that the infliction of any physical injury is an *aggravating* factor in sexual assault cases.

██ Moreover, Lepley's argument concentrates on one phrase, "relatively slight physical injury", lifted from the whole passage quoted above. When Lepley's offense is evaluated against all the criteria cited by this court in *Benboe*, it is apparent that his offense is not an uncommonly mitigated one.

Lepley's assault was planned; it was the culmination of a 6–month series of escalating acts of abuse which included many instances in which Lepley forced his stepdaughter to manually masturbate him to climax. While the act of fellatio itself may have been of "brief duration", it must be viewed in the context of this continuing course of abuse. Additionally, Lepley's assault—his forcing his stepdaughter to perform fellatio—is conduct that has potentially far greater emotional consequences to the victim than an act of manual sexual exploration or groping, which, primarily "sexual contact", becomes a first-degree offense because of a slight penetration of the labia.

In further contrast to the defendant in *Benboe*, Lepley used force against his stepdaughter to coerce her to perform the fellatio. Not only did Lepley hit his daughter until she acquiesced in this sexual act, but Lepley's role as parent carried with it the implicit threat of additional retaliation if J.Y. did not submit. The pre-sentence report contains ample description of Lepley's rigid and excessive physical discipline of his children, discipline which included frequent beatings with a wooden board that left the children bruised on their buttocks and upper thighs.

Finally, while the victim in *Benboe* may have suffered "no lasting emotional harm", the situation is different in Lepley's case. J.Y.'s letter to the sentencing court is full of unconcealed hatred toward Lepley, as well as bitterness over the effects that the sexual abuse has had on her life. Aware that her mother had written a letter recommending leniency, J.Y. urged the superior court to disregard her mother's views and sentence Lepley to a lengthy term of imprisonment.

For all these reasons, Judge Michalski was justified in concluding that Lepley had failed to prove the mitigating factor of "least serious conduct".

### B. The Non–Statutory Mitigating Factor of Extraordinary Potential for Rehabilitation

Lepley contends that he has extraordinarily good potential for rehabilitation, that it would be manifestly unfair to fail to modify the presumptive term to take account of this potential for rehabilitation, and that therefore the superior court should have referred his case to the three-judge panel. *See* AS 12.55.165, as interpreted in *Smith v. State*, 711 P.2d 561 (Alaska App.1985).

To establish this non-statutory mitigator of uncommonly good potential for rehabilitation, Lepley points to his lack of prior criminal convictions during the preceding forty-one years of his life. He also asserts that he has an "exceptional" work record, that his offense "was limited in duration", and that it was caused by "situational stress". Finally, Lepley argues that he has "acknowledged his crime, expressed remorse, and sought counseling ... for J.Y. and his whole family."

■ It was Lepley's burden in the superior court to establish the non-statutory mitigating factor of extraordinary potential for rehabilitation by clear and convincing evidence. AS 12.55.165; *Kirby v. State*, 748 P.2d 757, 763–64 (Alaska App.1987). Judge Michalski ruled that Lepley had failed to meet this burden of proof. We are to affirm the trial court's ruling unless we are convinced it is clearly erroneous. *Degler v. State*, 741 P.2d 659 (Alaska App. 1987).[1]

Lepley's lack of prior convictions is undisputed. However, the record does not clearly support Lepley's assertion of an "excellent" work history. Between 1976 and June, 1987, when Lepley and his family left Alaska to move to Virginia, Lepley held a total of six jobs. He refused to disclose his reasons for leaving these various jobs. Lepley's assertion of an excellent work history is apparently based on his last employment; he worked as an architect for the Department of the Navy in Virginia from June, 1987, to February, 1989, when he was arrested for the sexual abuse of his stepdaughter. His supervisor at this job told the pre-sentence investigator that Lepley had performed "highly satisfactorily" and would be considered for rehire if a future vacancy existed.

Judge Michalski did not comment on Lepley's employment history when he sentenced Lepley. However, Judge Michalski acknowledged that Lepley was an intelligent man who had admitted his offense and had already made genuine efforts to improve things for his family and for himself. Judge Michalski also found that Lepley had shown remorse, albeit mixed with self-pity.

■ But even though a defendant may show genuine remorse and a willingness to undergo treatment, and even though the defendant has better-than-average prospects of rehabilitation, this does not estab-

---

**1.** *Compare Kirby, supra,* where the issue was not the existence of the mitigating factor, but rather whether the defendant's concededly extraordinary potential for rehabilitation merited some adjustment of the presumptive term. When reviewing the trial judge's decision not to refer Kirby's case to the three-judge sentencing panel, we employed the "clearly mistaken" standard of review used in sentence appeals. *Kirby,* 748 P.2d at 765. In short, when the issue is a factual one—the existence or non-existence of an aggravating or mitigating factor—we will employ the "clearly erroneous" standard of review; when the issue is one of sentencing discretion—whether and how much a defendant's sentence should be adjusted on account of an aggravating or mitigating factor—we will employ the "clearly mistaken" standard of review.

lish the non-statutory mitigating factor defined in *Smith v. State.* *See Bartholomew v. State*, 720 P.2d 54 (Alaska App.1986). The superior court is justified in concluding that a defendant has unusually good potential for rehabilitation only when

> the court is satisfied, after reviewing the totality of the circumstances, that [the defendant] can adequately be treated in the community and need not be incarcerated for the full presumptive term in order to prevent future criminal activity.

*Kirby*, 748 P.2d at 766. Such a prediction of successful treatment and non-recidivism should only be made when the sentencing court is reasonably satisfied both that it knows why a particular crime was committed and that the conditions leading to the criminal act will not recur—either because the factors that led the defendant to commit the crime are readily correctable or because the defendant's criminal conduct resulted from unusual environmental stresses unlikely ever to recur. *Kirby*, 748 P.2d at 766.

Judge Michalski concluded that Lepley's sexual abuse of his daughter, while perhaps triggered by the stress of family and financial difficulties, arose from much more deep-seated problems: Lepley's methods of relating to his family and to other people in general. The sentencing record supports Judge Michalski's conclusion.

The criminal act that brought Lepley to court was an instance in which he coerced his stepdaughter to perform fellatio on him. This act was the culmination of a series of sexual intrusions and abuses that lasted six months, from January through June, 1987. Lepley attributes his abuse of his stepdaughter to the "stress" occurring in his family and professional life. However, it appears that Lepley himself was a major cause of the stress in his family life.

Lepley told the pre-sentence investigator that his children refused to accept his authority. However, both Lepley's wife and J.Y. told the investigator that Lepley would inflict excessive and harsh discipline on all his children for minor infractions. It would appear that Lepley exercised his authority peremptorily and that he inflicted severe, inappropriate punishment for any brooking of that authority.

Lepley's wife Katherine stated that Lepley is extremely authoritarian, someone who becomes angry when he is questioned. He was abusive toward both her and the children. Once he became so incensed with his wife that he threw a knife at her.

Katherine Lepley's letter to the court is revealing. While the general tone of the letter is supportive of her estranged husband, it is clear that her uppermost concern is the fact that Lepley would be unable to provide financial support to the family (in the form of child support and alimony payments) if he were incarcerated for a long period of time. Twice in her letter, Katherine makes statements which point to the existence of severe problems within the family unit other than the sexual abuse of J.Y. Katherine states that she left Lepley "for the children's sake, [*but*] *not* because I was afraid that anything like that [i.e., the sexual abuse] would happen again". (Emphasis added) Later in the letter, Katherine makes the comment, "Rick and I are in the process of filing for a dissolution of marriage. After a while, my family will feel safe and secure."

Lepley's peculiarly rigid attitude toward people and emotions is also evidenced by his interaction with the family counsellor in Virginia, Sarah Thilbault. Lepley told the pre-sentence investigator that he had great difficulty relating to Thilbault because of their "differing philosophies". Thilbault, on the other hand, said that her sessions with Lepley were unproductive because Lepley often became angry when they were discussing sensitive topics. Thilbault perceived Lepley as someone who was potentially dangerous because he lacks control over his own impulses.

Finally, while Lepley is concededly intelligent, he shows a marked lack of insight into emotions or interpersonal relations. He told Thilbault that his stepdaughter should have resisted him more strenuously when he forced her to perform fellatio on him. He did not attribute her acquiescence to the fact that he beat her on the head until she "consented". Rather, he asserted

that she had been watching X-rated movies, which Lepley claimed had made her willing to be abused.

The pre-sentence investigator noted that Lepley had a history of growing angry or becoming silent when asked to discuss sensitive issues; Lepley was guarded in the amount of information he was willing to share with his family counsellor in Virginia or with the pre-sentence investigator herself. This behavior indicates that the process leading to Lepley's self-perception and rehabilitation may be a lengthy, arduous one.

From this record, Judge Michalski was justified in concluding that Lepley's sexual abuse of his stepdaughter could not be satisfactorily explained as a momentary lapse of self-control brought on by situational stresses that were unlikely to recur. The record supports Judge Michalski's view that Lepley's problems were more deep-seated than Lepley suggested or wished to admit, and that they might prove intractable.

Lepley tries to analogize his case to *Kirby*, 748 P.2d 757. Lepley notes that he, like Kirby, readily admitted his guilt, took steps to correct his behavior, and voluntarily desisted from the abuse before it was reported to the authorities. This much is true. But Kirby presented psychological evidence showing that his criminal activities arose from adolescent emotional problems, problems that led to his social isolation and consequent failure to develop appropriate interpersonal skills, especially with regard to members of the opposite sex. Kirby's psychologist testified that, by the time of sentencing, Kirby had already made great advances in coping with these emotional problems and social deficiencies, and that the prognosis for Kirby's full rehabilitation was excellent. *Kirby*, 748 P.2d at 760–61, 766–67.

Lepley initially stated that he would offer psychological evidence on the issues of the causes of his behavior and his amenability to treatment. But, faced with a requirement that he be evaluated by an independent psychologist, Lepley ultimately decided to forego any reliance on psychological evaluations. Judge Michalski assured Lepley that he would draw no adverse conclusion from Lepley's decision nor would he speculate concerning what the psychological evaluations might have revealed. But the judge correctly noted that it was Lepley's burden to prove the mitigating factor of uncommonly good potential for rehabilitation by clear and convincing evidence.

As noted above, a defendant proves "uncommonly good potential for rehabilitation" when he provides a firm explanation of why his crime was committed and he demonstrates that the conditions leading to the criminal act will not recur. Given Judge Michalski's conclusion that Lepley's offense stemmed from deep-seated problems rather than temporary situational stress, and given the lack of any psychological evidence concerning the etiology of Lepley's problems or the chances for their successful treatment, Judge Michalski was justified in concluding that Lepley had failed to produce clear and convincing evidence of an uncommonly good potential for rehabilitation.

### Conclusion

Judge Michalski was justified in concluding that Lepley had failed to prove that his offense was among the least serious included in the definition of first-degree sexual abuse of a minor. Judge Michalski was further justified in concluding that Lepley had failed to prove that he had uncommonly good potential for rehabilitation. Thus, Judge Michalski acted properly when he declined to refer Lepley's case to the three-judge sentencing panel and instead imposed the 8–year presumptive term.

The sentence of the superior court is AFFIRMED.