NOTICE

*The text of this opinion can be corrected before the opinion is published in the* <u>*Pacific Reporter*</u>. *Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.us*

# IN THE COURT OF APPEALS OF THE STATE OF ALASKA

ADRIAN T. OLMSTEAD,

                Appellant,

      v.

STATE OF ALASKA,

                Appellee.

Court of Appeals No. A-12784
Trial Court No. 1KE-16-00055 CR

O P I N I O N

No. 2683 — November 6, 2020

Appeal from the Superior Court, First Judicial District, Ketchikan, Trevor N. Stephens, Judge, and the Statewide Three-Judge Sentencing Panel, Anna M. Moran, Michael P. McConahy, and Eric A. Aarseth, Judges.

Appearances: Gavin Kentch, Law Office of Gavin Kentch, LLC, under contract with the Public Defender Agency, and Quinlan Steiner, Public Defender, Anchorage, for the Appellant. Eric A. Ringsmuth, Assistant Attorney General, Office of Criminal Appeals, Anchorage, and Jahna Lindemuth, Attorney General, Juneau, for the Appellee.

Before: Allard, Chief Judge, Harbison, Judge, and Coats, Senior Judge.[*]

---

    [*] Sitting by assignment made pursuant to Article IV, Section 11 of the Alaska Constitution and Administrative Rule 23(a).

Judge ALLARD.

Adrian T. Olmstead pleaded guilty to one count of second-degree sexual abuse of a minor for engaging in sexual contact with his niece.[1] At sentencing, the superior court found that Olmstead had proved the non-statutory mitigating factor of exemplary post-offense conduct, and the superior court referred Olmstead's case to the statewide three-judge sentencing panel.[2] However, the three-judge panel found that Olmstead had failed to prove the non-statutory mitigator, and the case was remanded to the superior court for sentencing within the presumptive range.

Olmstead appeals the three-judge panel's decision. For the reasons explained here, we conclude that Olmstead established the non-statutory mitigating factor of exemplary post-offense conduct. Accordingly, we vacate Olmstead's sentence and remand this case to the three-judge panel for reconsideration of what effect, if any, the non-statutory mitigator should have on Olmstead's sentence.

*Factual and procedural history*

At the time of his offense, nineteen-year-old Olmstead lived with his parents in a household with strong religious structure. Olmstead had frequent contact with his four-year-old nephew, K.R., and his six-year-old niece, L.R., who visited their grandparents and slept overnight on a regular basis.

In late January 2016, L.R. and K.R. disclosed to their parents a "game" they had played with Olmstead where he had his pants down, they saw his genitals, and they

---

[1] AS 11.41.436(a)(2). Olmstead was charged with two counts relating to his niece, and one count relating to his nephew. He pleaded guilty to one count relating to his niece, but he admitted to the facts underlying all three charges.

[2] *See State v. McKinney*, 946 P.2d 456, 457-58 (Alaska App. 1997).

grabbed his "pee pee." L.R. also said she had seen her uncle with his pants off at other times and that he "moons" them.

When confronted by his sister and brother-in-law about the children's statements, Olmstead admitted that most of what the children said was true. He expressed remorse and apologized. The following day, he also volunteered details about another incident that occurred months earlier when he pulled down L.R.'s pants and briefly touched and patted her vagina while playing a game of "doctor" with L.R. At the request of the victims' parents, Olmstead agreed to undergo mental health counseling.

Olmstead attended a mental health assessment the next day. The mental health therapist later reported that Olmstead was "cooperative" and "corroborated the information his sister [the victims' mother] provided earlier." She found that he was "a reliable reporter regarding his interactions with his niece and nephew, although extremely naive in terms of sexual taboos." According to the therapist, Olmstead was "willing to comply with any recommendations made," and he agreed to return the next day but was ultimately unable to do so because he was arrested. The therapist concluded her report with the following analysis:

> In summary, I was impressed by Mr. Olmstead's ownership of his actions. He easily could have denied all accusations, which would have catapulted his niece and nephew in a lengthy investigation. His immediate confession protected those for whom he cared deeply.

The abuse was reported to law enforcement on the same day that Olmstead attended the mental health assessment. The next day, the children were interviewed by the police. In her interview, L.R. reported that both she and Olmstead had their pants pulled down during the game of "doctor," and that Olmstead had "patted" her vagina and put his hands "between her butt cheeks," spreading them apart. She also reported that Olmstead had asked her to "touch his butt," and his penis, but she refused.

Olmstead was then contacted by law enforcement and asked to come to the police station for an interview. Against the advice of his parents, Olmstead voluntarily went to the police station without a lawyer. Olmstead waived his right to counsel and agreed to be interviewed by the police. In the interview, Olmstead confessed to the sexual interactions with his niece and nephew, largely confirming their reports. Olmstead also admitted to having an erection during five of the interactions.

At the end of the interview, Olmstead was arrested and charged with three counts of second-degree sexual abuse of a minor and two counts of second-degree indecent exposure.[3]

During the same week that he was arrested, Olmstead also contacted — on his own initiative — the elders at his church to confess to what he had done and to seek spiritual guidance. After Olmstead was released on bail, he attended weekly meetings at the church for about four hours a week. He also received one-on-one pastoral counseling for one to two hours a week.

Olmstead subsequently pleaded guilty to one count of second-degree sexual abuse of a minor in exchange for dismissal of the remaining charges. The plea agreement provided that his active term of imprisonment would be capped at 8 years and that one aggravating factor applied to his conduct — the victim was particularly vulnerable given her age.[4] As part of the plea agreement, Olmstead also admitted to the conduct underlying the dismissed charges.

At the sentencing hearing, Olmstead and his mother testified. His mother described Olmstead's sheltered and religious upbringing. Olmstead testified to his

---

[3] AS 11.41.436(a)(2) and AS 11.41.460, respectively.

[4] AS 12.55.155(c)(5).

attempts to be as honest as he could be and to atone for what he had done. In describing his own conduct, Olmstead referred to it as a "game" that had gone too far.

Olmstead's attorney asked the sentencing judge to refer Olmstead's case to the statewide three-judge sentencing panel to consider two non-statutory mitigating factors: exemplary post-offense conduct and extraordinary potential for rehabilitation.[5]

The sentencing judge ruled first that Olmstead had not established the non-statutory mitigating factor of extraordinary potential for rehabilitation. The judge acknowledged that there was good reason to be optimistic about Olmstead's potential for rehabilitation, and he noted that many of the factors supporting the non-statutory mitigating factor of extraordinary potential for rehabilitation existed in Olmstead's case, such as remorse, lack of prior criminal history, and family support. But the judge ultimately concluded that Olmstead had failed to meet his burden of proving extraordinary potential for rehabilitation because Olmstead had failed to provide a sex offender risk assessment or other expert evaluation that could have clarified why this conduct happened and why it would not happen again.

The judge agreed, however, that Olmstead had established the non-statutory mitigating factor of exemplary post-offense conduct. In his written order transmitting the case to the three-judge panel, the judge catalogued the actions that Olmstead had taken that constituted exemplary post-offense conduct. The judge noted first Olmstead's prompt confession and apology:

> Mr. Olmstead promptly confessed when confronted by K.R.'s
> father about the incident with K.R. He contacted K.R.'s
> parents later that day and expressed remorse and
> acknowledged that the children were basically telling the

---

[5] Olmstead also requested referral on the basis of the non-statutory "cumulative" mitigating factor recognized in *Luckart v. State*, 270 P.3d 816, 820 (Alaska App. 2012). The sentencing judge rejected this basis for referral.

truth. He met with K.R.'s father a day or two later and during that conversation he talked about the "doctor" incident involving L.R., which apparently had not previously been brought up. The family met and decided that the best course of action would be for Mr. Olmstead to seek counseling, which he did.

The judge also noted Olmstead's cooperation with the police and the other steps he took to minimize the harm to the victims:

> Mr. Olmstead . . . did voluntarily go to [the police] without counsel where he waived his *Miranda* rights and agreed to be interviewed. He confessed during the interview. He pled guilty without the case going to trial, so neither K.R. nor L.R. was required to testify in open court. He wrote a letter to the victims in which he accepted responsibility and apologized for his actions. He has consistently and continually, throughout this case, accepted responsibility for his conduct, apologized to the [sic] L.R., K.R., their parents and his family, and there is nothing in the record which shows or suggests that he has blamed L.R. or K.R. for anything.

Based on these actions, the judge found that Olmstead had established the non-statutory mitigator of exemplary post-offense conduct, noting that, in his view, "[t]his is not a particularly close call." In a footnote in his written order, the judge acknowledged that the victims' family was currently estranged from the extended family, but he found that Olmstead's post-offense conduct had not contributed to the intra-family problems.

In addition to finding exemplary post-offense conduct, the judge also found that it would be manifestly unjust for Olmstead to be ineligible for discretionary parole once he completed sex offender treatment in prison.

Based on the judge's findings, Olmstead's case was transferred to the statewide three-judge sentencing panel. The three-judge panel held a hearing in which Olmstead's father testified and the victims' father made a brief statement. Olmstead did

not testify, although the panel had a transcript of his testimony from the superior court sentencing.

At one point, Olmstead's father was questioned about Olmstead's counseling. Olmstead's father testified that Olmstead was unable to continue with the mental health counseling during his pretrial release because he did not have the money. He noted, however, that Olmstead continued to attend weekly meetings at the church and to engage in one-on-one pastoral counseling. When asked why Olmstead had not seen any specialized sex offender therapists, Olmstead's father stated that the family did not know "who to talk to about that."

Following the hearing, the three-judge panel issued an order rejecting the non-statutory mitigating factor of exemplary post-offense conduct. In rejecting the non-statutory mitigator, the three-judge panel primarily focused on (1) the current estrangement between the victims' family and the extended family; (2) Olmstead referring to the sexual abuse as a "game" that went "too far," which the three-judge panel viewed as "minimiz[ing]" his behavior; and (3) Olmstead failing to provide a sex offender risk assessment or to attend sex offender treatment prior to sentencing.

Because the three-judge panel rejected the superior court's grounds for referral, Olmstead's case was remanded to the superior court for sentencing.[6] At sentencing, the judge imposed a sentence of 10 years with 5 suspended, 5 years to serve — the minimum active term permitted under the applicable presumptive range.[7]

This appeal followed.

---

[6] *See* AS 12.55.175(b); *Garner v. State*, 266 P.3d 1045, 1047-48 (Alaska App. 2011).

[7] AS 12.55.125(i)(3)(A).

*The non-statutory mitigating factor of exemplary post-offense conduct*

Created by the Alaska legislature in 1978, the statewide three-judge sentencing panel serves as an important safety valve in Alaska's presumptive sentencing scheme.[8] "A sentencing court must refer a case to the three-judge sentencing panel in two circumstances: (1) if the judge concludes that a sentence within the presumptive range would be manifestly unjust under the *Chaney* sentencing criteria; [or] (2) if the defendant proves a non-statutory mitigating factor and the judge concludes that it would be manifestly unjust to fail to consider that non-statutory factor in imposing the defendant's sentence."[9]

Extraordinary potential for rehabilitation is a commonly asserted non-statutory mitigating factor.[10] A defendant has established this non-statutory mitigator "if the court is satisfied, after reviewing the totality of the circumstances, that [the defendant] can adequately be treated in the community and need not be incarcerated for the full presumptive term in order to prevent future criminal activity."[11]

---

[8] *See* SLA 1978, ch. 166, § 12 (creating the three-judge sentencing panel); *Nell v. State*, 642 P.2d 1361, 1370 (Alaska App. 1982) (upholding Alaska's presumptive sentencing scheme as constitutional in part because of the existence of the three-judge panel, which has "broad sentencing discretion under AS 12.55.175 if it finds that a presumptive sentence would result in 'manifest injustice'"); *see also* Letter of Intent for Senate Bill 218, 2006 Senate Journal 2212 (emphasizing the importance of the three-judge panel as a "safety net" for sex offender cases that are "exceptional" or that "cr[y] out for mercy").

[9] *Daniels v. State*, 339 P.3d 1027, 1030 (Alaska App. 2014).

[10] *See, e.g.*, *O'Connor v. State*, 444 P.3d 226, 232-35 (Alaska App. 2019); *Beltz v. State*, 980 P.2d 474, 481 (Alaska App. 1999); *Lepley v. State*, 807 P.2d 1095, 1099-1101 (Alaska App. 1991); *Kirby v. State*, 748 P.2d 757, 766 (Alaska App. 1987).

[11] *Kirby*, 748 P.2d at 766; *see also O'Connor*, 444 P.3d at 234 ("[A] sentencing judge . . . must have articulable reasons, based on the evidentiary record, for concluding that the

(continued...)

A closely related non-statutory mitigating factor is exemplary post-offense conduct.[12] This non-statutory mitigator was first recognized in *State v. McKinney*, a sexual abuse case in which the non-statutory mitigator of extraordinary potential for rehabilitation was statutorily barred because of an aggravator the sentencing judge had found.[13] In *McKinney*, we acknowledged that there was some overlap between extraordinary potential for rehabilitation and exemplary post-offense conduct, but we distinguished the non-statutory mitigating factor of exemplary post-offense conduct based on its "significant potential to ameliorate the impact of [the offense] on [the victim] and to enhance [the victim's] prospects for emotional recovery."[14]

*McKinney* involved a father who sexually abused his daughter. When confronted by his wife, McKinney admitted the abuse, and the family made a collective decision to seek counseling and report the abuse to law enforcement. McKinney made a full confession to state troopers, and he began sex-offender counseling prior to

----

[11] (...continued) defendant can be rehabilitated earlier than the minimum term of imprisonment prescribed by the applicable presumptive sentencing range — even though these articulable reasons may not precisely identify the ultimate causes of the defendant's criminal behavior." (citing *Lepley*, 807 P.2d at 1095)).

[12] *See State v. McKinney*, 946 P.2d 456, 457 (Alaska App. 1997) (approving of the sentencing judge's conclusion that society should value the "beneficial results" of a defendant's responsible post-offense behavior — conduct that "would foster a victim's recovery").

[13] *Id.* at 458; *see* AS 12.55.165(b) (explaining that the court "may not refer a case to a three-judge panel based on the defendant's potential for rehabilitation if the court finds that a factor in aggravation set out in AS 12.55.155(c)(2), (8), (10), (12), (15), (17), (18)(B), (20), (21), or (28) is present").

[14] *McKinney*, 946 P.2d at 458; *see also Daniels*, 339 P.3d at 1031-32 (acknowledging the overlap between the two non-statutory mitigating factors of extraordinary potential for rehabilitation and exemplary post-offense conduct).

sentencing. Despite the seriousness of the charges, the family — including the victim — desired reunification. The family counselor thought reunification was a workable option and urged the sentencing judge to promote it as soon as possible.[15]

The sentencing judge concluded that "manifest injustice would result from her inability to consider a non-statutory mitigating factor — exemplary post-disclosure conduct."[16] As the judge explained:

> [I]n the instance before the court, the offender's post-crime conduct legitimately sets him apart from other offenders who commit the same offense. Society should value actions which help a victim of intra-family abuse to recover from the devastation of sexual abuse.[17]

The judge then described the type of post-crime conduct that could qualify as exemplary in these situations:

> There are things which will help a victim's recovery: an offender publicly and privately accepting responsibility for the conduct; an offender assuming blame and communicating the blamelessness of the victim; and support from the non-offending parent (which is more forthcoming when the offending parent accepts responsibility and does not minimize [their] conduct or blame the victim).[18]

But as the judge recognized, "the current sentencing scheme precludes the court's consideration of these factors."[19] Instead, "[i]t treats an offender who engages in further post-disclosure conduct which hurts a victim in the same way that it treats an offender

---

[15] *McKinney*, 946 P.2d at 457.

[16] *Id.*

[17] *Id.*

[18] *Id.*

[19] *Id.*

who behaves responsibly post-disclosure to help a victim's recovery."[20] Because the judge found that it was manifestly unjust to sentence McKinney without taking into consideration his exemplary post-offense conduct, she referred his case to the three-judge panel.[21]

The three-judge panel agreed with the sentencing judge's analysis and sentenced McKinney to a non-presumptive term of 8 years, thereby making McKinney eligible for discretionary parole after he completed sex offender treatment in prison.[22] The State appealed, and we affirmed the sentence on appeal.[23]

*The current case*

Whether a mitigating factor exists is a mixed question of law and fact.[24] We review factual findings under the clearly erroneous standard, affirming the lower court's findings unless we are left with a definite and firm conviction that a mistake has been

---

[20] *Id.*

[21] *Id.*

[22] *Id.*; *see Luckart v. State*, 314 P.3d 1226, 1238 (Alaska App. 2013) (holding that "AS 12.55.175(c) gives the three-judge panel the authority to expand a defendant's eligibility for discretionary parole unless that authority is restricted by some other statutory provision"); *cf.* AS 33.16.090(a)(1) (making a defendant convicted of second-degree sexual abuse of a minor ineligible for discretionary parole unless it has been "allowed by the three-judge panel under AS 12.55.175").

[23] *McKinney*, 946 P.2d at 457.

[24] *Michael v. State*, 115 P.3d 517, 519 (Alaska 2005).

made.[25]   We review the legal determination of whether those facts establish the mitigating factor de novo.[26]

Here, the sentencing judge found that Olmstead had established the non-statutory mitigating factor of exemplary post-offense conduct based on Olmstead's "general course of post-offense conduct," which the court found was "similar in nature to that of the [d]efendant in *McKinney* and was beneficial to the victim in the sense found to be pertinent in *McKinney*." This course of conduct included: promptly confessing and apologizing, agreeing to seek counseling, cooperating with the police, pleading guilty, and "consistently and continually" accepting responsibility for his conduct and not blaming the victims.

The three-judge panel did not disagree with any of these findings. Instead, the three-judge panel focused on other facts that it believed precluded a finding of exemplary post-offense conduct. These facts were Olmstead's references to the sexual abuse as a "game" that went "too far," which the panel viewed as "minimizing" his conduct; Olmstead's failure to engage in sex offender treatment; and the current estrangement between the victims' family and the extended family.

On appeal, Olmstead's appellate attorney challenges these reasons for rejecting the non-statutory mitigator. First, the attorney disputes that Olmstead "minimized" his conduct. The attorney points to multiple places in the record where Olmstead acknowledged the seriousness of his conduct, and the attorney also points to the sentencing judge's express finding that Olmstead "consistently and continually" accepted responsibility for his conduct and did not blame the victims.

---

[25]   *Id.*; *see also Booth v. State*, 251 P.3d 369, 373 (Alaska App. 2011).

[26]   *Michael*, 115 P.3d at 519.

Next, the attorney disputes that Olmstead failed to engage in sex offender treatment. The attorney asserts that the pastoral counseling that Olmstead received constituted a "culturally meaningful response to his situation" and was "the functional equivalent of a secular defendant undergoing formal treatment with a licensed sex-offender treatment program." The attorney also argues that sex offender treatment is expensive and the record suggests that Olmstead was unable to afford such treatment.

Lastly, the attorney argues that the current estrangement should not be held against Olmstead. The attorney argues specifically that the exemplary post-offense conduct non-statutory mitigator should not be limited to only those defendants who achieve family reunification because, in some cases, not reconciling may be what the victim wants.

Some of these arguments are well-taken. In *Auer v. State*, an unpublished case, we affirmed the sentencing judge's finding of no exemplary post-offense conduct because the record showed that the defendant deflected blame onto the child victim, asserting that the child "came onto him" and so he "gave in to her flirting."[27] The record also showed the defendant "did not undertake any exceptional efforts to assume responsibility or assist the victim."[28]

Here, in contrast, the record shows that Olmstead has consistently accepted responsibility for his conduct and has not deflected blame onto the victims. The record also shows that Olmstead has repeatedly acted in a manner intended to reduce the secondary trauma to his niece and nephew that a more extensive criminal investigation and prosecution would likely have caused.

---

[27] *Auer v. State*, 2006 WL 3691690, at *1-2 (Alaska App. Dec. 13, 2006) (unpublished).

[28] *Id*. at *2.

We also agree with Olmstead's appellate attorney that the current estrangement between the victims' family and the extended family should not preclude a finding of exemplary post-offense conduct in this case. As the sentencing judge found, Olmstead's post-offense conduct did not contribute to the estrangement, which seems to have been caused by other family members. We also do not believe that the exemplary post-offense conduct non-statutory mitigator should be reserved only for those cases where family reunification is the goal, because some victims and their families may not want reunification. Instead, the critical question should be whether the defendant's conduct post-offense had "significant potential to ameliorate the impact of the sexual abuse on [the victims] and to enhance [their] prospects for emotional recovery."[29] We agree with the sentencing judge that Olmstead's post-offense conduct qualified as exemplary conduct in this regard.

Lastly, we agree with Olmstead's attorney that Olmstead's mental health assessment and pastoral counseling are additional factors to be weighed in favor of finding exemplary post-offense conduct. We do not agree, however, that the pastoral counseling was the "functional equivalent" of sex offender treatment. Although there may be circumstances in which pastoral counseling is as effective as sex offender treatment, there is little evidence of that in this case. To the contrary, Olmstead's use of the word "game" and his insistence that his conduct was not sexual suggests that he currently lacks insight into his criminal behavior. (However, unlike the three-judge panel, we do not find this lack of insight surprising given Olmstead's young age, his sheltered upbringing, and the relative speed with which this case resolved.)

---

[29] *State v. McKinney*, 946 P.2d 456, 458 (Alaska App. 1997); *see also Auer*, 2006 WL 3691690, at *2 (affirming the superior court's decision not to refer the case to the three-judge panel because the defendant "attempted to deflect some blame onto the victim" and "did not undertake any exceptional efforts to assume responsibility or assist the victim").

It is not clear from the record why Olmstead did not provide a sex offender risk assessment. It is possible money was the problem, as the appellate attorney suggests, or there may be some other explanation.[30] In any case, we do not agree with the three-judge panel's conclusion that the absence of a sex offender risk assessment was fatal to Olmstead's claim of exemplary post-offense conduct in the same way that it appears to have been fatal to his claim of extraordinary potential for rehabilitation.[31] The two non-statutory mitigators — although overlapping in many ways — target different public policy concerns.

In rejecting the non-statutory mitigating factor of exemplary post-offense conduct, the three-judge panel appeared to focus on the ways in which Olmstead's post-offense conduct was not necessarily perfect. But there is almost always something *more* that a defendant could do, and if "exemplary" is interpreted to mean "perfect," then there will always be something that will prevent the courts from finding this non-statutory mitigating factor. "Exemplary" can also mean "serving as a model," "deserving imitation," or "commendable."[32] The record here shows that Olmstead's post-offense conduct *was* commendable and deserving of imitation, and a model for other sex

---

[30] We note that Olmstead is indigent and was represented by public counsel. However, typically the public agency representing an indigent defendant will pay the costs of a sex offender risk assessment.

[31] *Compare Kirby v. State*, 748 P.2d 757, 767 (Alaska App. 1987) (finding extraordinary potential for rehabilitation where defendant presented expert psychological evidence at sentencing), *with Lepley v. State*, 807 P.2d at 1095, 1100 (Alaska App. 1991) (finding no extraordinary potential for rehabilitation "given the lack of any psychological evidence concerning the etiology of [the defendant's] problems or the chances for their successful treatment").

[32] *Exemplary*, WEBSTER'S II NEW COLLEGE DICTIONARY (3d ed. 2005).

offenders, who generally demonstrate little concern for the well-being of their victims.

In sum, we agree with the sentencing judge that the non-statutory mitigating factor of exemplary post-offense conduct was established in this case, and we conclude that the three-judge panel erred when it rejected this non-statutory mitigator. Accordingly, we vacate Olmstead's sentence and remand this case to the three-judge panel for reconsideration of Olmstead's sentence in light of the non-statutory mitigator. In deciding what effect, if any, the non-statutory mitigating factor should have on Olmstead's sentence, the three-judge panel should consider whether the sentence should be reduced or whether Olmstead should be made eligible for discretionary parole or some combination of the two. The three-judge panel may also consider the benefits that Olmstead has already received by virtue of the plea agreement.

On remand, Olmstead is permitted to supplement the record with any additional information relevant to his sentencing, including any sex offender risk assessment that he may have completed in the interim.

*Conclusion*

The judgment of the superior court is VACATED and this case is REMANDED to the statewide three-judge sentencing panel for proceedings consistent with the guidance provided here.